**Terry J. WILKINS, Plaintiff–Appellant,**

v.

**Donald E. JAKEWAY, et al.,
Defendants–Appellees.**

No. 98–3180.

United States Court of Appeals,
Sixth Circuit.

Argued: April 23, 1999.

Decided and Filed: July 19, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 19, 1999.

Alexander M. Spater (argued and briefed), Spater, Gittes, Schulte & Kolman, Columbus, Ohio, for Plaintiff–Appellant.

Pamela J. Gordon, Office of the Attorney General of Ohio, Columbus, Ohio, Jack W. Decker (argued and briefed), Office of the Attorney General, Employment Law Section, Columbus, Ohio, for Defendants–Appellees.

Before: KEITH, MERRITT, and DAUGHTREY, Circuit Judges.

## AMENDED OPINION

KEITH, Circuit Judge.

Plaintiff appeals a grant of summary judgment which dismissed his action, brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution, on the basis of res judicata. This panel concludes that Plaintiff's suit against Defendants in their individual capacities is not barred by the principles of res judicata. Accordingly, we reverse the district court's judgment as it relates to the Defendants in their individual capacities. The court's judgment is affirmed, however, as it relates to the Defendants in their official capacities.

## I. BACKGROUND

*Factual Background*

A detailed recitation of the factual background of this case is set forth in the district court's opinion at *Wilkins v. Jakeway*, 993 F.Supp. 635 (1998). The facts pertinent to the matter currently before this panel are, however, briefly summarized below.

Plaintiff–Appellant Terry Wilkins was formerly employed by the Ohio Department of Development ("ODOD"), most recently as Chief of the Office of Community Service. The Office of Community Service is charged with distributing federal and state funds to community-based non-profit organizations. The Office of Community Service is also responsible for monitoring the community organizations' usage of the grant monies. Beginning in 1990, Wilkins began to suspect that certain community organizations were misusing federal funds. He further believed that the ODOD's Audit Office was contributing to the misuse because of its delay in auditing and reviewing the community organizations.

Wilkins voiced his criticism frequently and loudly. Consequently, his relationship with his immediate supervisor, Defendant Roberta Garber, began to deteriorate. In July of 1992, Garber drafted a memorandum to Defendant Donald Jakeway, Director of the ODOD, recommending that Wilkins be terminated. As it turns out, there were serious problems with some of the community organizations' use of federal funds. An investigation was initiated by the Ohio Inspector General's Office ("OIG"), and Jakeway postponed taking any action against Wilkins until the pending investigation was completed.

Upon completion of its investigation, the OIG issued a report which was highly critical of the Audit Office. The OIG believed that the program directors, including Garber and Wilkins, did not respond appropriately to the troubled community service organizations. In response to the OIG's conclusions, Jakeway initially sought to terminate Wilkins, Garber and several other directors. He was convinced to spare Wilkins and Garber from termination, and, instead, issued written reprimands to them.

Meanwhile, Wilkins's rebelliousness continued. Among other incidents, he ridi-

culed Garber during staff meetings and made disparaging remarks about a female colleague. Garber issued several reprimands, both written and verbal, to Wilkins during this period. Ultimately, Wilkins was terminated for insubordination in February 1993.

*Procedural Background*

Wilkins filed the instant action pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution (hereinafter referred to as the "First Amendment case/suit/action").[1] Plaintiff alleged that Jakeway, Defendant Vincent Lombardi[2] and Garber, in their individual and official capacities, unlawfully terminated him for exercising his right to free speech and voicing his criticism of the misuse of funds and the ODOD's Audit Office.

Soon after filing the First Amendment action, Wilkins filed a second suit under the whistleblower provisions of the federal False Claims Act ("FCA") (hereinafter the "FCA case/suit/action") against Jakeway, Lombardi and Garber, in both their official and individual capacities. Wilkins alleged that he was harassed, disciplined and terminated for complaining about the misuse of funds and the incompetence of the Audit Office in detecting the abuses—claims which are nearly identical to those posed in the First Amendment action. The FCA suit, which included several qui tam claims filed on behalf of the United States, was initially placed under seal. The United States subsequently declined to intervene in the suit and the seal was removed. At that point, Plaintiff filed his FCA complaint in district court.

In September of 1995, Judge Graham, ruling for the district court in the FCA action, granted in part and denied in part the Defendants' motion to dismiss for fail-

ure to state a claim. The court concluded that Wilkins could not assert whistleblower claims against the Defendants in their individual capacities because they were his supervisors not his "employers" under the FCA. The FCA suit was, however, allowed to proceed against Jakeway in his official capacity.

Following the court's ruling on the motion to dismiss and several other procedural maneuvers in the case, Defendants filed their first and only answer in the FCA case in January 1996, raising res judicata as an affirmative defense. Ultimately, in February of 1997, Judge Graham granted summary judgment to the Defendants and dismissed all of Wilkins's remaining FCA claims. The court ruled that Wilkins was not a whistleblower under the FCA and his grievances were not voiced in furtherance of the FCA.[3]

In January 1998, the district court in the First Amendment suit granted summary judgment to the Defendants on the grounds that, under res judicata, the First Amendment action was precluded by the disposition of the FCA suit. Plaintiff filed a timely notice of appeal challenging this decision.

## II. ANALYSIS

Wilkins's appeal of the grant of summary judgment requires this panel to decide whether the instant action, the First Amendment suit, was properly dismissed on the grounds of res judicata. Although we strongly disapprove of the duplicity of suits in this matter, we conclude that the First Amendment action was not precluded by the resolution of the FCA suit.

An appellate court's review of a grant of summary judgment is de novo. *J.Z.G. Resources, Inc., v. Shelby Ins. Co.,*

1. Plaintiff also brought pendent state court claims which were dismissed early on in the proceedings.

2. Lombardi was Garber's immediate supervisor—Wilkins reported to Garber, who, in turn, reported to Lombardi, who then reported to Jakeway.

3. That decision was affirmed by this Court in *United States ex rel. Wilkins v. State of Ohio,* 145 F.3d 1333 (6th Cir.1998).

84 F.3d 211, 213 (6th Cir.1996). Summary judgment may be granted only when there is no genuine issue of material fact, thereby entitling the movant to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden of showing there is no factual issue in dispute rests with the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Additionally, a district court's dismissal of a case on the basis of res judicata is reviewed de novo. *Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir.1995), cert. denied, 517 U.S. 1220, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996).

■ The doctrine of res judicata includes two separate concepts—issue preclusion and claim preclusion. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). Claim preclusion or true res judicata, the issue before this panel, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.* This Circuit

has articulated that a claim will be barred under the doctrine of claim preclusion if the following four elements are present: (1) a final decision on the merits; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action. *Kane,* 71 F.3d at 560.

■ In this action, the central dispute involves the first two elements of claim preclusion—whether there was a final decision on the merits and whether the two actions were filed against the same parties.[4] Each will be addressed in turn.

*Final Decision on the Merits*

■ In his September 1995 decision which granted in part and denied in part Defendants' motion that Wilkins failed to state a claim in the FCA suit, Judge Graham stated:

Defendants also move to dismiss the complaint insofar as plaintiff seeks to hold them individually liable on his whistleblower claim ... [Section 3730(h) of the False Claims Act] provides relief to any employee who is discharged, demoted, suspended, threatened, harassed or otherwise discriminated against ... "by his or her employer." .... In United States ex rel. Lamar v. Burke, ... the

---

**4.** Wilkins admits that there is an identity of the causes of action in his two actions. Thus, it is undisputed that this element is satisfied.

As to the third element, whether the claims in the FCA suit should have been brought in the First Amendment suit, Plaintiff briefly argues that although both cases could have been litigated in the same action, it is questionable whether they should have been litigated in the same case. We can summarily reject this argument. First, Wilkins cites to no case law to support the above distinction. Moreover, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc., v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). Both the FCA and First Amendment actions

clearly encompassed the same set of facts—whether Wilkins was wrongfully discharged for airing complaints about the misuse of funds and the Audit Office's contribution to that alleged abuse. It is clear to this panel that the Plaintiff advanced two separate theories in two separate suits before two different courts for one common set of facts. This is the exact situation which the doctrine of res judicata, by compelling litigants to bring all related claims in one suit, seeks to avoid. *Westwood Chemical Co. v. Kulick,* 656 F.2d 1224, 1229 (6th Cir.1981). Thus, we are unable to comprehend how the actions could have been brought simultaneously but simply should not have been. To the contrary, Plaintiff's claims could have and should have been raised in the same suit.

court ... noted the line of authority that supervisors may not be held personally liable under Title VII, and concluded that an agent or supervisor was not an "employer" subject to liability under § 3730(h). The court agrees with this interpretation of § 3730(h). The court further finds that the complaint does not allege facts sufficient to hold the individual defendants liable under § 3730(h) ... The court finds that plaintiff's complaint fails to state a claim against the individual defendants under 3730(h), and defendants' motion to dismiss is granted in that regard.[5]

Based on the above excerpt, Appellant contends that Judge Graham's dismissal was partially grounded on the fact that the Defendants, in their individual capacities, were not "employers" under the False Claims Act. Wilkins argues that a ruling that a defendant is not an employer is essentially a determination that the court does not have subject matter jurisdiction, and, as a result, the district court's ruling was not a decision on the merits.[6] As such, he argues that the Defendants fail to establish that the FCA suit was dismissed on the merits, as required by the first prong of the claim preclusion test.

■ This panel is persuaded that the district court in the FCA suit did not reach the merits of the case. By determining that the individual Defendants were simply Wilkins's supervisors and not his "employers," the court essentially found that these Defendants, in their individual capacities, were not the proper parties to be named in the FCA suit. This simply does not go to the actual merits of the case, which is whether or not Wilkins was unlawfully discharged in violation of the FCA.

Defendants rebut that the district court itself states that the dismissal was granted under 12(b)(6). Thus, they argue, by definition, a final decision on the merits was rendered. While this position is initially attractive, this panel just cannot ignore the practical reality that the merits of Wilkins's FCA claims against the individual Defendants just were not examined by the district court. Despite what the court said about deciding the matter as a decision on the merits under 12(b)(6), what the court did, by determining that the individual Defendants were not "employers" pursuant to the FCA, was to effectively decline to reach the merits of Plaintiff's claims as to the individual Defendants.

This Circuit's prior decision in Rogers may, at first blush, appear to cut against the conclusion reached by this panel. See *Rogers*, 798 F.2d at 916 ("Normally, Rule 12(b)(6) judgments are dismissals on the merits and Rule 12(b)(1) dismissals are not.... Where a statutory right is being pursued, however, and the defense raised is that the plaintiff or defendant does not come within the purview of the statute, the judicial acceptance of this defense, however it is accomplished, is the death knell of the litigation and has the same effect as a dismissal on the merits."). See also *Truitt v. County of Wayne*, 148 F.3d 644, 647 (6th Cir.1998) (citing approvingly to Rogers and holding that the district court's dismissal of plaintiff's Title VII claims under

---

5. Section 3730(h) (the whistleblower provisions) of the FCA does not provide any guidance on applying the term "employer." *United States ex rel. Lamar v. Burke*, 894 F.Supp. 1345, 1347 (E.D.Mo.1995). Thus, the district court in the FCA suit looked to cases construing Title VII, the ADEA and the ADA for instruction. Where necessary, we have joined the district court in consulting or relying on case law under Title VII, ADEA and ADA for resolution of this issue.

6. A motion to dismiss for lack of subject matter jurisdiction does not operate as a dismiss-

al on the merits. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 917 (6th Cir.1986). The rationale behind this is that merely because one court does not have jurisdiction over a dispute does not necessarily mean that another court is precluded from properly exercising jurisdiction over the matter. *Id.* Moreover, if a court does not have jurisdiction over a matter, it cannot properly reach the merits of the case. *Id.* In contrast, a dismissal for failure to state a claim under Rule 12(b)(6) is considered a dismissal on the merits. *Id.*

Rule 12(b)(1) will be construed as a dismissal under Rule 12(b)(6) since it made no difference to the outcome of the case). One may argue that since these individual Defendants were not "employers" under the FCA, they did not come within the purview of that statute. Arguably, then, this is a death knell for Plaintiff's FCA claims against the Defendants, in their individual capacities, and is essentially a decision on the merits.

However, we conclude that there is a huge distinction between the factual circumstances facing the panel in Rogers and the matter currently before us. In *Rogers*, the ultimate question was whether or not the defendant-employer was an "employer" under the federal Age Discrimination in Employment Act ("ADEA"), which defines "employer" as an enterprise with eight or more employees. *Id.* at 914. In that case, a ruling that the employer had less than eight employees was most certainly the death knell of any and all claims plaintiff may have brought on the basis of the ADEA. Since the defendant-employer in Rogers had less than eight employees and was not an "employer" under the ADEA, all of plaintiff's ADEA claims were dismissed and the plaintiff was left without anyone to sue. Conversely, in the instant matter, a decision that these particular individual Defendants were not employers, but supervisors, did not bar Wilkins from bringing his suit against the person or entity which was Wilkins's "employer." In fact, the claims against Jakeway in his official capacity were allowed to proceed precisely because the court found that Jakeway (in his official capacity) was properly considered an "employer." Thus, unlike the complainant in Rogers who was completely barred from pursuing any ADEA claims because his employer did not satisfy the statutory definition of "employer," Wilkins was not completely barred from pursuing his FCA claims—he was simply forced to identify the proper party. Consequently, the failure of the individual Defendants to come within the purview of the definition of "employer" is not a death

knell to Wilkins's FCA action and does not have the same effect as a judgment on the merits. For that reason, we conclude that although the district court's dismissal was framed in terms of a Rule 12(b)(6) dismissal on the merits, in actuality, the court's determination that the individual Defendants were not "employers" under the FCA was jurisdictional because it did not go to the merits of Plaintiff's suit.

As there was no final decision on the merits rendered in the FCA action as to the Defendants in their individual capacities, the FCA action does not serve to bar Plaintiff's First Amendment claims against the individual Defendants.

*Action between the same parties or privies*

The district court held that the FCA suit and the First Amendment action involved the same parties. With the filing of the second amended complaint in the FCA suit, Wilkins sued Jakeway, Lombardi and Garber in both their individual and official capacities. Similarly, from the inception of the First Amendment case, Wilkins sued all three Defendants in both their individual and official capacities. Since the same parties were represented in both lawsuits, the court determined that there was an identity of parties.

■■■ The principles of res judicata apply only when a final judgment has been rendered. Restatement (Second) of Judgments § 13 (1982). In fact, Chapter Four of the Restatement, entitled "Parties and Other Persons Affected by Judgments," discusses who will be considered a party or will be treated as the equivalent of a party for purposes of res judicata. *Id.* at ch. 4 introductory note. The introductory note to Chapter Four explains that: "This Chapter deals with the persons affected by judgments. The rules herein presuppose rendition of a judgment having the requisites of validity stated in § 1 and of finality stated in §§ 13–16." *Id.* Thus, it is clear from the outset of the chapter that the rules regarding which parties or privies will be bound by a judgment presume that

a final judgment has been obtained. As we concluded above that there was no final judgment on the merits in the FCA action as to the individual Defendants, this second element of the res judicata test is also not satisfied.[7]

Although we determine that the FCA suit has no preclusive effect on Wilkins's First Amendment claims, we do wish to strenuously voice our displeasure with what appears to be a classic case of claim splitting. Both the FCA and First Amendment actions arise from one central set of facts whether Wilkins was wrongfully terminated for airing his criticism of the misuse of federal funding and the Audit Office's contribution to that misuse. Thus, in each suit Plaintiff would have had to put forth the same evidence and the same witnesses, thereby subjecting two different courts and two different judges to essentially the same case.

Plaintiff's counsel quite vigorously argued in oral arguments that he did not intend to engage in claim splitting, but simply wished to separate those claims which would be placed under seal from those which would not. This would allow counsel to immediately commence discovery on those claims which were not sealed. Although we do not question the veracity of counsel's intent, the fact remains that, by bringing two different suits which present two different theories of the case arising from the same factual situation, counsel has engaged in the precise behavior the doctrine res judicata seeks to discourage. See generally Restatement (Second) of Judgments § 24, 25 cmt. a, d (explaining that res judicata extinguishes all claims arising out of the same transaction of series of transactions. As such, a plaintiff is pressured to present all material relevant to the claim in one action, including any and all theories of the case even where those theories are based on different substantive grounds.). This type of duplicity should be avoided at all costs. "Courts

apply the doctrine of res judicata to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." *Sanders Confectionery Products, Inc., v. Heller Financial Inc.,* 973 F.2d 474, 480 (6th Cir.1992), cert. denied, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). Although this Plaintiff "lucked out" because the first decision to arrive at judgment was not a final decision on the merits as to all the Defendants named in the instant matter, not every claimant who brings two separate suits arising from one mutual set of facts will be so fortunate.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment entered by the district court and **REMAND** the matter for further proceedings consistent with this determination as to the Defendants in their individual capacities. The remainder of the court's judgment is **AFFIRMED.**

---

7. Based on this determination, we find it unnecessary to address Plaintiff's remaining argument that Defendants acquiesced to claim splitting.