Dorothy **BURTON** Plaintiff,

v.

**CLEVELAND EMPOWERMENT ZONE OFFICE, et al.**
**Defendants**

**No. 1:02 CV 510.**

United States District Court,
N.D. Ohio.

July 8, 2003.

Dorothy Burton, Cleveland, OH, pro se.

Thomas L. Anastos, City of Cleveland Law Department, Cleveland, OH, Counsel for Cleveland Ohio Empowerment Zone, Most Worshipful Saint Johns, Valerie McCall, Toni Brewer, Michael Ciccarello and Bill Patton.

Cary J. Zabell, Cary J. Zabell Co., LPA, Beachwood, OH, Counsel for Peter Rubin.

Annette G. Butler, Office of the U.S. Attorney, Northern District of Ohio, Cleveland, OH, Counsel for Rod Milburn.

## MEMORANDUM OF OPINION AND ORDER GRANTING MOTION TO DISMISS

WELLS, District Judge.

Before the Court is Defendant Department of Housing and Urban Development's ("HUD") motion to dismiss.[1] (Docket # 24). A response was filed. (Docket # 27). Defendants Peter Rubin, Cleveland Empowerment Zone Office, Valerie McCall, and Bill Patmon have joined the motion to dismiss. (Docket # 36, 37). For the reasons discussed below, the motion to dismiss will be granted and the Court will dismiss the claims against the remaining defendants *sua sponte*.

### I. The Complaint

On 18 March 2002, pro se plaintiff Dorothy Burton filed this in forma pauperis action pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the Uniform Relocation Act (URA), 42 U.S.C. § 4601, et seq.[2] She directs her claims against the following defendants: Cleveland Empowerment Zone Office ("EZ"), Most Worshipful Saint John's Grand Lodge AF/AM Masons ("MWSJ"), EZ Review Board Member Peter Rubin,[3] EZ Director Valerie McCall, Glenville Development Corporation ("GDC") representative Toni Brewer, EZ/HUD Compliance Officer Michael Ciccarello, Glenville Ward Councilman Bill Patton, HUD Regional Officer Rod Milburn, HUD Office of Community Planning and Development Director Lana Vacha,

HUD Area Coordinator Doug Selby, Executive Assistant of Governmental Affairs Ken Silliman, Economic Development Director Chris Warren, "Jane/John Doe, individually/corporately, associations, [and] partnerships."[4] Ms. Burton states that she is a licenced beautician and President of Aquarius Unlimited Beauty Salon ("the Salon") which operated in the Empowerment Zone area for 15 years.[5]

Plaintiff's complaint alleges the following. In 1994, Ms. Burton leased space for her Salon in a building owned by MWSJ. The Salon operated as a tenant on a month-to-month lease with MWSJ from February 1994 until September 1997. Ms. Burton claims she and MWSJ agreed she would pay rent and electric utility bills, while MWSJ would pay the gas and water utility bills.

Ms. Burton alleges she was "approached" sometime in 1994, by Empowerment Zone representatives regarding "her eligibility for funding because her business . . . was located in the Empowerment Zone area."[6] At that time, she was operating her Salon out of a building located at 610 East 106th Street "where the City planned to develop a plaza." (Compl. at ¶ 17.) Ms. Burton claims she subsequently invested approximately three thousand dollars to fulfill requirements "stipulated" by Empowerment Zone representatives, but does not elaborate on the nature of these "re-

---

1. Ms. Burton brought suit against several defendants, including Rod Milburn, a HUD employee. HUD has substituted itself for Mr. Milburn.

2. The full title of the Act is The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 84 Stat. 1894, 42 U.S.C. § 4601 et seq.

3. Ms. Burton also identifies Peter Rubin as President of Glenville Development Corporation and Coral Company.

4. The claims against Defendants Vancha, Selby, Silliman, and Warren were dismissed on 30 October 2002. (Docket # 6).

5. The location to which Ms. Burton is referring is a shopping plaza in the Glenville section of Cleveland, Ohio.

6. Ms. Burton describes the Empowerment Zone Office as a City of Cleveland agency responsible for implementation of HUD regulations regarding "URA/EZ monies."

quirements" or on what the funds were expended.

Without addressing what occurred during the subsequent three year period after she was approached by EZ representatives, Ms. Burton states Glenville Development Center representative Toni Brewer and the owner of MWSJ approached her in July or August 1997 to advise that the City of Cleveland planned to build a new plaza on the site where MWSJ was located. She was "orally informed" that because the Salon would be displaced as a result of these plans she would be entitled to receive "relocation monies." (Compl. at ¶ 18.) She adds that Ms. Brewer assured her that she would be entitled to relocate within the new plaza.

Ms. Burton describes Glenville Town Center, Ltd. ("GTC") as a project initiated by Glenville Development Corporation and the Coral Company for the purpose of developing the Glenville Plaza. She claims the project has been "in the making" for years. GTC registered with Ohio's Secretary of State in September 1997.

In the same month GTC registered with the State, Ms. Burton was approached by a utility worker who advised her that the water in the Salon would be turned off based on MWSJ's failure to pay the utility bill "for months." Ms. Burton asserts that in order to avoid the loss of a critical resource for her business, she paid the water bill with MWSJ's agreement that her rental obligation would be waived for the month of October. She claims the gas was then turned off in October 1997 for non-payment.[7] Without gas heat, Ms. Burton used electric heaters which increased her electric bills. Because MWSJ failed to pay the water or gas bills for nine months, Ms. Burton stopped making rental payments for the same period of time.

She adds that during the nine months she endured these conditions she was "constantly being told by Patmon and the EZ ... that she/Aquarius 'must stay on the property to get the relocation monies.'" (Compl. at ¶ 31.)

In May 1998, an attorney representing MWSJ served Ms. Burton with a three-day notice to vacate. Ms. Burton claims she was advised by an attorney with whom she was acquainted that the eviction was forced and "big money must be involved in this." (Compl. at ¶ 33.)

Ms. Burton alleges that, unbeknownst to her at the time, Glenville Town Center applied for a $2 million loan from the City of Cleveland on 29 May 1998. Attached to her complaint is a copy of an "Open End Mortgage" which states, in part:

> On May 29th, the year 1998, GLENVILLE TOWN CENTER, Ltd. (hereinafter "Mortgagor") a limited liability company organized under the laws of the State of Ohio, ... WARRANTS to the CITY OF CLEVELAND ....("the Mortgagee") ... that for consideration hereinafter stated ... the following described property located at 630 East 106th Street, Cleveland, Ohio 44108.... This instrument is given ... to secure the payment of a certain promissory noted signed by Mortgagor .... dated May 29, 1998, in the principal sum of Two Million Dollars.

(Ex. D. Open End Mort. at 1). The property GTC identified as collateral for the loan is the same MWSJ property in which Ms. Burton leased space for her business. Ms. Burton asserts that the eviction notice from MWSJ, therefore, should have been from GTC, which was the real owner of the property.

---

7. Ms. Burton states she later learned that Glenville Town Center had an appraisal completed on the MWSJ property in October 1997.

In June 1998, Ms. Burton received another three-day notice from MWSJ to evict. She states MWSJ sent this notice based on its false accusation that she allowed "persons" to enter her shop to vandalize the property.

After a state court ordered her eviction, Ms. Burton moved to 882 East 105 Street in July 1998; a location which she claims "Randy" from the Glenville Development Corporation recommended to her in January or February 1998. She claims the area was "drug infested and in a poor locale" causing her to lose more customers and sub-contractors. Ms. Burton states she incurred all costs associated with the relocation of her business to the new site.

In October 1998, the Glenville Town Plaza was recorded as being mortgaged to Cleveland for $2 million. (Compl. at ¶ 37). In a letter dated 14 October 1998, the Interim Executive Director for Glenville Development Corporation, Tracey Kirksey, sent a letter to Mr. Square Cobb of MWSJ requesting his signature on an attached "Notice of Voluntary Acquisition Requirements for Federal or Federally–Assisted Project." (Letter from Kirksey to Cobb of 10/14/98, Ex. A.) The property on the Notice attached to Ms. Kirksey's letter was located at 630 East 106th Street, Cleveland, Ohio 44108 and MWSJ is listed as the "Seller". The Notice sets forth GDC's plan to purchase the property for GTC and includes the following statement:

> The City of Cleveland receives funds from the U.S. Department of Housing and Urban Development (HUD) to acquire, rehabilitate, or construct housing; or to assist economic development projects. "Buyer" [Glenville Development Corp. *for* Glenville Towne Centre, Ltd.] may receive a portion of these funds from the City and may use these funds in conjunction with the purchase of Sell-

er's [Most Worshipful St. John's Grand Lodge] property.

(Letter from Kirksey to Cobb of 10/14/98, Ex. A). Ms. Burton alleges that this letter reflects defendants' failure to comply with "49 Code of Federal Regulations, Subpart B–Real Property Acquisition 24.102 Basic Acquisition Policies," which mandates that an agency "shall" promptly make a written offer to the owner to acquire the property after the completion of an appraisal. Ms. Burton states that, while the appraisal of MWSJ was completed in October 1997, GDC did not send its formal notice until one year later.

In April 2001, Ms. Burton wrote a letter to former Cleveland Mayor White regarding her concerns about "relocation discrepancies, forced eviction, loans." (Compl. at ¶ 41.) Ms. Burton then met with "Bennett, Kirskey and Mercuri"[8] in May 2001, but left "in a state of confusion." (Compl. at ¶ 42.) In a memorandum to Valerie McCall from defendant Michael Ciccarello, dated 11 May 2001, Mr. Ciccarello concluded that "Aquarius Beauty Salon *is not* entitled to relocation assistance under the URA (Handbook 1378, paragraph 1–8c(1)). Eviction for just cause negates eligibility for relocation assistance." (Ex. D. McCall Memo. to Ciccarello)(emphasis in original).

Ms. Burton states that, in June 2001, she wrote a letter to HUD defendant Rod Milburn expressing her concern over the lack of financial assistance for relocation from HUD. Ms. Burton states that she also spoke with a HUD representative she identifies as "Mrs. Hill" in August 2001 to express her concerns. She neither attaches a copy of her letter to Mr. Milburn nor provides any details of her conversation with Mrs. Hill.

Without attaching a copy of the document, Ms. Burton states she received a letter from Valerie McCall as well as ex-

---

**8.** Ms. Burton does not identify which parties Bennett and Mercuri represented.

hibits regarding the relocation of the Aquarius Salon. In this letter, Ms. McCall allegedly expressed her belief that Glenville Town Center did not express an interest in purchasing the MWSJ property until October 1998; well after Ms. Burton was evicted. Ms. Burton attended a meeting with Ms. McCall the following month where Ms. McCall reiterated her position that Ms. Burton was not entitled to relocation funding because she had been evicted from the MWSJ building prior to GTC's attempt to acquire the property.

Ms. Burton maintains that GTC owned the property on which MWSJ was located during the time she was subjected to conditions which led to her eviction by MWSJ. She asserts that the Empowerment Zone defendants improperly recorded the Plaza as being mortgaged to Cleveland on October 1998 to conceal the fact that it used this same property was used by GTC as collateral for a loan from Cleveland in May 1998.

In October 2001, Ms. Burton telephoned Rod Milburn at HUD to follow up on her June 2001 letter to him. She states that although "HUD requires that the EZ respond to a complaint within 15 days," five months passed without a reply from HUD and EZ representatives have never responded. She claims Mr. Milburn's only response to her was "that everyone is required to adhere to the Uniform Relocation regulations and that Burton should get an attorney." (Compl. at ¶ 48.)

In the four Counts enumerated in her complaint, Ms. Burton asserts that defendants violated her civil rights and the requirements of the URA pursuant to 42 U.S.C. § 4601 et seq. and 49 C.F.R. § 24.1. The Uniform Relocation Assistance and Real Property Acquisition Policies Act and the HUD regulations promulgated in accordance with its mandate, make relocation benefits available to persons displaced by federal or federally assisted state projects. 42 U.S.C. § 4601 et seq; 24 C.F.R. § 42.1 & 49 C.F.R. § 24.1.

## II. Prior Suit

Ms. Burton filed a previous action, Case No. 1:01CV2789, against the current defendants in this case and other defendants on 11 December 2001. That complaint recited almost all of the allegations described above. However, that case involved civil RICO claims. Essentially, Ms. Burton alleged that EZ, Coral Company, GDC, GTC, and MWSJ conspired to defraud her. United States District Judge Donald C. Nugent dismissed the case for failure to state a claim on 5 February 2002.

## III. Standard

A motion to dismiss for failure to state a claim upon which relief may be granted, brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, will be granted in cases in which a plaintiff can prove no set of facts in support of the claims raised that would entitle him or her to the relief sought, even when taking the allegations in the complaint as true and construing them liberally in favor of the plaintiff. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lawrence v. Chancery Court of Tennessee,* 188 F.3d 687 (6th Cir.1999). The Court need not accept as true, however, legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987).

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the district court is required to dismiss any claim under 28 U.S.C. § 1915(e)(2) if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact.[9] *Neitzke*

---

**9.** A claim may be dismissed *sua sponte,* without prior notice to the plaintiff and without

*v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Lawler v. Marshall,* 898 F.2d 1196 (6th Cir.1990); *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996).

## IV. Law and Analysis

HUD argues that Ms. Burton's claims should be dismissed because (1) they are barred by the doctrine of res judicata and (2) HUD was not properly served. As the res judicata argument is dispositive, the Court need not consider the question of service.

■ Under Sixth Circuit precedent, "a claim will be barred by prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Wilkins v. Jakeway,* 183 F.3d 528, 532 (6th Cir.1999).

■ Here, each of these factors is met. First, Judge Nugent issued a final decision on the merits in the previous case when he dismissed the complaint pursuant to Rule 12(b)(6). *Rogers v. Stratton Industries, Inc.,* 798 F.2d 913, 916 (6th Cir.1986). Second, the remaining defendants in this action each were sued in the prior action by the same plaintiff, Ms. Burton.

Third, although the prior action involved a civil RICO claim and this case involves URA and civil rights claims, the URA and civil rights claims should have been raised in the prior action. The factual allegations of Ms. Burton's two complaints are nearly

identical. Both suits arise from the same set of facts. The Sixth Circuit explained in *Wilkins,*

> Plaintiff advanced two separate theories in two separate suits before two different courts for one common set of facts. This is the exact situation which the doctrine of res judicata, by compelling litigants to bring all related claims in one suit, seeks to avoid.

183 F.3d at 532.

Fourth, there is an identity of the causes of action. According to the Sixth Circuit, "[i]dentity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 484 (6th Cir.1992). Here, the civil RICO, URA, and civil rights claims arise from the same set of facts recounted above. Ms. Burton likely would call the same witnesses and offer the same exhibits to prove each claim.

Thus, Ms. Burton's current claims against HUD and the remaining defendants are barred by res judicata. If Ms. Burton wanted to raise these claims, she had an obligation to do so during the last round of litigation involving these events.

## V. Conclusion

For the reasons provided above, HUD's motion to dismiss, joined by Defendants Peter Rubin, Cleveland Empowerment Zone Office, Valerie McCall, and Bill Patmon, is granted. Ms. Burton's claims against the remaining defendants are dis-

service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth,* 114 F.3d 601, 608–09 (6th Cir.

1997); *Spruytte v. Walters,* 753 F.2d 498, 500 (6th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986); *Harris v. Johnson,* 784 F.2d 222, 224 (6th Cir.1986); *Brooks v. Seiter,* 779 F.2d 1177, 1179 (6th Cir.1985).

missed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IT IS SO ORDERED.

### ORDER OF DISMISSAL

This Court, having issued its Memorandum of Opinion and Order Granting Motion to Dismiss, hereby orders that Plaintiff Dorothy Burton's claims against Defendants Cleveland Empowerment Zone Office, Most Worshipful Saint Johns, Valerie McCall, Toni Brewer, Michael Ciccarello, Bill Patmon, Peter Rubin, HUD (for Rod Milburn), and John Does are dismissed with prejudice. Plaintiff shall bear the costs.

IT IS SO ORDERED.