JOURNAL ENTRY AND OPINION
Plaintiff-appellant Cheryl Brubaker-Schaub (hereafter plaintiff) was employed by defendants-appellees the B.F. Goodrich Company and its Geon Vinyl Division (hereafter collectively referred to as defendants). Over time, plaintiff indicated her interest in being considered for promotion to a management level position. By all accounts, plaintiff's work was considered excellent in certain respects. Other areas, however, were considered only satisfactory and in need of further development. Plaintiff never received the promotion to management she sought. By late 1993, a company-wide reduction in force resulted in the elimination of over two hundred employees, including plaintiff.
Plaintiff then sued the defendants, first in federal court and then in state court, contending that the defendants had wrongfully denied her promotions because of her gender and had retaliated against her for being an advocate for women's interests. Plaintiff ultimately took her case against the defendants to trial in the Cuyahoga County Common Pleas Court. At the close of all the evidence, the court directed a verdict in favor of the defendants on plaintiff's retaliation claim. The case went to the jury on plaintiff's claim that the defendants discriminated against her on the basis of her gender when, in April 1993, they promoted Patrick Tully to be manager instead of plaintiff. On that claim, the jury returned a defense verdict. Plaintiff appeals, contending that the trial court erred in dismissing other discrimination claims prior to trial, directing a verdict on the retaliation claim during trial, and instructing the jury on her gender discrimination claim at trial. We conclude that plaintiff's appeal is not well taken and therefore affirm.
At all relevant times, B.F. Goodrich and its Geon division[1]
manufactured and distributed plastic compounds and resins commonly used in plumbing, flooring, medical tubing, blinds, windows and automotive components. Plaintiff was hired as an entry-level employee with B.F. Goodrich in 1977. To better position herself for possible job promotions, plaintiff earned her college degree in marketing and business administration in 1987. In 1988, she was made a marketing representative in the defendants' Molding Department. By 1989, plaintiff earned her master's degree in business administration.
During a 1990 performance evaluation, plaintiff's supervisor praised her for her attention to detail. Responding to plaintiff's desire for promotion, however, the supervisor told her that the "good-old-boy network" at Goodrich was strong. Plaintiff says she told her supervisor that the men at the company had made it clear, subtly clear that they did not want her around. The supervisor nevertheless encouraged plaintiff to network and socialize more.
In September 1990, plaintiff moved to the defendants' Custom Profile segment of the defendants' Extrusion Department. Dan Kickel, the head of the Extrusion Department, promoted plaintiff to the position of Senior Business Representative. Plaintiff reported directly to Thomas Rambasek, who headed the Custom Profile business segment. This segment was described as the "crown jewels" of the Geon division's business.
The company generally distinguished job responsibilities as being either strategic or tactical. Strategic planning was targeted to help the company's business grow and involved such matters as business development, customer interaction, pricing, and product line management. Tactical planning involved the execution and implementation of the strategic plan in order to achieve the stated objectives.
According to the defendants, plaintiff functioned well in a tactical capacity. Indeed, plaintiff was one of the employees who received the company's Arrow Award in 1992 in recognition of her outstanding work performance. The defendants maintained, however, that plaintiff had not yet demonstrated the capacity for strategic planning. For her part, plaintiff maintained that she and Rambasek jointly established the strategic goals and plan for the Custom Profile segment.
Believing that she was performing as a manager but had been unfairly denied advancement, plaintiff began to meet with other female employees to discuss matters of concern. A loosely-knit group devoted to female employee concerns had existed even before plaintiff joined and, over time, smaller groups evolved as a result of differing concerns. In January 1993, plaintiff and two other members of the Women's Network discussed some of their concerns with Senior Vice President Don Knechtges.
Meanwhile, between 1991 and 1993, the Custom Profile segment reportedly failed to meet the company's expectations. In early 1993, Extrusion Department head Dan Kickel removed Rambasek as manager of the Custom Profile segment. Kickel replaced Rambasek with Dennis Gunson, who had been the business manager of the Wire and Cable segment of the Extrusion Department. Kickel did not consider plaintiff to replace Rambasek because Gunson had displayed the ability to successfully engage in strategic planning while plaintiff had not yet demonstrated that ability during her tenure with Rambasek.
Not long after his appointment, however, Gunson took another position with B.F. Goodrich. In April 1993, Kickel named Patrick Tully to head the Custom Profile segment. Tully had been the Senior Business Manager over the Vertical Blinds segment of the Extrusion Department and had a proven record demonstrating his abilities in strategic planning. Plaintiff again was not considered ready to lead the Custom Profile segment.
For her part, plaintiff maintained that she was qualified to be named manager of the Custom Profile segment because, practically speaking, she had functioned as the segment's manager in deed but not in name. She was sharply critical of Tully's conduct as manager. She believed that the defendants wrongly denied her a promotion because of her gender.
Six months later, however, in November 1993, the now separate Geon company experienced a reduction-in-force resulting in the loss of 220 employees. Plaintiff was among those who were let go and was escorted from the premises on her last day.
On April 28, 1994, plaintiff filed a complaint against the defendants in the United States District Court for the Northern District of Ohio. Plaintiff's complaint asserted federal and state law claims for gender discrimination and retaliation. In 1997, the federal court granted the defendants a partial summary judgment on all claims except that which asserted the defendants discriminated against plaintiff by promoting Tully instead of plaintiff in 1993. Subsequently, the federal court granted plaintiff's motion to dismiss her action, without prejudice, pursuant to Fed.R.Civ.P. 41(a)(2).
On August 14, 1997, plaintiff filed this action against the same defendants in the Cuyahoga County Common Pleas Court. The case eventually proceeded to trial in November 1998 on plaintiff's gender discrimination and retaliation claims related to the Tully promotion. After more than two weeks of evidence, the trial court directed a verdict in the defendants' favor on the retaliation claim and submitted the case to the jury on the gender discrimination claim. The jury returned a verdict in favor of the defendants, and it is from that final judgment that plaintiff brings this appeal.
Plaintiff's first assignment of error states:
I. THE TRIAL COURT ERRED IN ITS JURY CHARGE.
Plaintiff contends that the court erred when it failed to give the ultimate issue instruction contained in plaintiff's proposed jury instructions. Plaintiff further contends that the instructions given by the court were erroneous. These errors, she asserts, entitle her to a new trial. Our review, however, causes us to conclude that the court's instructions provided an accurate statement of the law applicable to this case and that plaintiff's substantial rights were not prejudiced by the court's charge. Accordingly, we overrule plaintiff's first assignment of error.
A trial court must give jury instructions which are a correct, clear, and complete statement of the law applicable to the case. See Sharp v.Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312; Marshall v. Gibson
(1985), 19 Ohio St.3d 10, 12. If reasonable minds might reach the conclusion sought by a proposed instruction, the court should give it. See Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. The court need not, however, use the proponent's exact language; the court retains discretion to use its own language to communicate the same legal principle. See Prejean v. Euclid Bd. of Edn. (1997), 119 Ohio App.3d 793;Youseff v. Parr, Inc. (1990), 69 Ohio App.3d 679.
A court reviewing claimed errors in a jury instruction must consider the jury charge as a whole and determine whether the charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. See Becker v. Lake Cty. Mem. Hosp. W. (1990),53 Ohio St.3d 202, 208. To show reversible error by the court's failure to give a proposed jury instruction, the complaining party must show that the trial court's failure to instruct as requested was arbitrary, unreasonable, or unconscionable and that the absence of the requested instruction was prejudicial to the substantial rights of its proponent. See Hammerschmidt v. Mignogna (1996), 115 Ohio App.3d 276, 280; Jaworskiv. Med. Radiation Consultants (1991), 71 Ohio App.3d 320, 327-328.
In the case at bar, plaintiff first contends that the trial court erred when it failed to give the following proposed jury instruction concerning her burden: "Plaintiff must prove by the greater weight of the evidence that her gender was a determining factor in the defendants' employment decisions." The transcript reflects that the court's instructions included the following:
 The burden of proof is on the Plaintiff in this case to prove the facts necessary for her cause by a preponderance of the evidence. The Plaintiff has the burden of proving by a preponderance of the evidence that her gender was a determining factor in the defendants' decision at issue not to promote her effective in April 1993 — April 5th was the announced date, I'll use that date — to the position of business manager that Mr. Tully received.
 The preponderance of the evidence is the greater weight of the evidence * * *.
(Tr. 2510-2511.) In returning the defense verdict, the jury gave a negative response to the following interrogatory:
 Do you find that plaintiff Cheryl Brubaker-Schaub has proven by a preponderance of the evidence that her gender was a determining factor in the decision by defendants the Geon Company and the BFGoodrich [sic] Company not to promote her on April 5, 1993 to the business manager position given to Patrick Tully?
We perceive little substantive difference between the instruction the plaintiff proposed and the instruction the court gave tailored to the facts of this case. The court's instruction communicates the same legal principle plaintiff requested. The jury's interrogatory response that plaintiff's gender was not a determining factor confirms our conclusion. See Markus v. Sico Inc. (May 13, 1999), Cuyahoga App. No. 74060, unreported; Reitz v. Howlett (1995), 106 Ohio App.3d 409, 415.
Plaintiff also complains that the court erred in failing to instruct on gender-related stereotypes, as she requested in her sixth, seventh, and eighth proposed jury instructions. Plaintiff makes no showing, however, that the absence of these requested instructions prejudiced her case.
Plaintiff further maintains that the court's instructions allocating evidentiary burdens relating to discriminatory intent were erroneous.McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792,[2] established the analytical framework in discriminatory treatment cases:
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejections. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248, 252-253
(citations omitted). If the defendant articulates a legitimate nondiscriminatory reason, the McDonnell Douglas framework — with its presumptions and shifting burdens — disappears. St. Mary's Honor Center v. Hicks (1993), 509 U.S. 502, 510. The plaintiff, however, retains the ultimate burden of proving that the defendant intentionally discriminated against her:
 [I]n attempting to satisfy this burden, the plaintiff — once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision — must be afforded "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." That is, the plaintiff may attempt to establish that [the plaintiff] was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence. Moreover, although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom * * * on the issue of whether the defendant's explanation is pretextual."
Reeves v. Sanderson Plumbing Products, Inc. (2000), 120 S.Ct. 2097,2106 (citations omitted).
The discriminatory intent necessary for the plaintiff's case may be proved directly by evidence, of any nature, showing that an employer more likely than not was motivated by discriminatory intent. Mauzy v. KellyServices, Inc. (1996), 75 Ohio St.3d 578, syllabus at para. 1. Discriminatory intent may also be proved indirectly by showing that the employee was a member of a protected class of persons, was qualified for the position, and was treated differently from similarly situated employees who were not members of the class. Such a showing serves to eliminate the most common nondiscriminatory reasons for the employer's action: lack of qualifications or the absence of a vacancy. Mauzy,supra, at 583.
In this case, the trial court provided an admittedly cumbersome instruction describing the McDonnell Douglas framework with its presumptions and shifting burdens. (Tr. 2512-2518.) Plaintiff does not identify, however, any substantive misstatement of law in the burden-shifting instruction. Contrary to plaintiff's contention, nothing in the court's charge prohibited the jury from considering evidence of any nature tending to show that discriminatory intent was a determining factor in the defendants' employment decisions. Indeed, the court's instructions made clear that the ultimate question for the jury to decide was whether plaintiff proved by a preponderance of the evidence that her gender was a determining or motivating factor in the defendants' decision not to promote her.
Plaintiff argues that the court should not have given the jury aMcDonnell Douglas burden-shifting instruction.[3] Several courts have questioned the wisdom of instructing the jury on the McDonnell Douglas
framework. See, e.g., Farley v. Nationwide Mutual Ins. Co. (C.A.11, 1999), 197 F.3d 1322; Pivirotta v. Innovative Systems, Inc. (C.A.3, 1999), 191 F.3d 344; In re Lewis (C.A.6, 1988), 845 F.2d 624; Valentinev. Harris (May 11, 1994), Hamilton App. No. C-920977, unreported. InDudley v. Wal-Mart Stores, Inc. (C.A.11, 1999), 166 F.3d 1317, the court observed:
 Although statements like "prima facie case" and burden of production faithfully endeavor to track the three-step formulation of McDonnell Douglas Corp v. Green, and Texas Dep't. of Community Affairs v. Burdine, they create a distinct risk of confusing the jury. Whether a plaintiff has made out a prima facie case has no place in the jury room. Furthermore, the distinction between burden of persuasion and burden of production is not familiar to jurors, and they may easily be misled by hearing the word "burden" (though referring to a burden of production) used with reference to a defendant in an explanation of that part of the charge that concerns a plaintiff's burden of persuasion. Instead, if the defendant has met its burden of producing evidence that, if taken as true, would rebut the prima facie case, a threshold matter to be decided by the judge, the jury need not be told anything about a defendant's burden of production.
Dudley, 166 F.3d at 1322 (emphasis in original; citations and internal punctuation omitted). As another court observed, "judges should remember that their audience is composed of jurors and not law students."Pivirotto, supra, at 347, n. 1.
But in Dudley the court held the use of the McDonnell Douglas
instruction was harmless error because the trial court gave the most critical instruction: "[I]n order to recover each Plaintiff must prove by a preponderance of the evidence that * * * sex was a substantial or motivating factor in Defendant's employment decisions." See Dudley,166 F.3d at 1322. Similarly, the jury instructions given here told the jury that the plaintiff had to prove by a preponderance of the evidence that her gender was a determining or motivating factor in the defendants' employment decision. (Tr. 2510, 2512, 2518.) Moreover, as previously noted, the jury specifically answered an interrogatory finding that plaintiff had not proven by a preponderance of the evidence that her gender was a determining factor in the decision not to promote her to the position of business manager. We are satisfied that the jury was asked to decide the ultimate question and that they did so.
Plaintiff complains that the court misstated plaintiff's burden by instructing that it was for the jury to decide whether plaintiff was qualified for the position: "The Court doesn't tell you in any situation: Despite being qualified she was rejected; and finally, the position was filled by a man of comparable or lesser qualification." (Tr. 2514.) It is hard to know what the jury believed this sentence to say. Reading the charge as a whole, however, we believe the court fairly described plaintiff's burden as requiring proof that she was qualified for the position but that her gender was a determining factor in denying her the promotion. And considering the extent to which plaintiff sought to prove Tully was less qualified for the position, we are hard pressed to say that the court erred in instructing the jury that it was for them to assess the respective qualifications.
Plaintiff next criticizes the court's pretext instruction. (Tr. 2515-2517.) In its charge to the jury the court stated as follows:
 You only get to the third and final step if the defendant — first of all, in order to get to step three, the plaintiff has to prove a prima facie case; two, the defendant had to articulate this legitimate, nondiscriminatory reason or reasons, and three, assuming the defendant did that and you're at this step, the plaintiff then must prove that the rationale, this articulation that just described, the rationale set forth by the defendant is only a pretext for their discriminatory conduct and that her sex was a motivating reason of the defendant in that decision. That's the three-step process.
* * *
 Now, there are different ways a plaintiff may establish pretext. You may consider whether the plaintiff showed the defendants' reasons are unworthy of belief or the defendants' reasons are not the true reasons for not promoting her or that, even if the defendants' reasons are believable, that the gender of the plaintiff was nonetheless a motivating reason not to promote her.
 If you determine that the defendants' claimed reason for their decision is pretextual, you may conclude that the defendants' [sic] discriminated against the plaintiff because of her gender.
* * *
 You are instructed that if you find the reasons articulated by the defendant as to why the plaintiff was not promoted in April 1993 are false or untrue, you may but you are not required to find the plaintiff's gender was a reason behind that decision. In order for you to find in favor of the defendant [sic], it is not enough that you disbelieve the defendants' articulated reasons, you must also find that plaintiff's gender was a determinative factor in the decision to promote Patrick Tully. That's a bit repetitive but it's consistent.
(Tr. 2515-2518).
Plaintiff argues that this instruction placed an additional legal burden on plaintiff. Plaintiff does not, however, explain what the additional burden is. We fail to see, moreover, how instructing the jury on the various ways the defendants' proffered reasons could be shown to be mere pretext erroneously placed an additional legal burden on plaintiff. Although the court's McDonnell Douglas analytical framework is cumbersome, its discussion of pretext is consistent with the step-by-step analysis the court chose to use. Furthermore, that discussion is consistent with the analysis provided by the U.S. Supreme Court. InReeves, the Supreme Court clarified "that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." But the court also stated that "this is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability." Reeves v. Sanderson PlumbingProducts, Inc., supra, at 2108-9 (emphasis in original).
We remain convinced that the court's charge adequately instructed the jury about the issues they had to decide to render their verdict. We find no error prejudicial to the parties' rights. Accordingly, we overrule plaintiff's first assigned error.
Plaintiff's second assigned error states:
 II. THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT ON PLAINTIFF-APPELLANT'S HOSTILE WORK ENVIRONMENT CLAIM.
This assignment of error is not well taken.
In her complaint filed below in the Cuyahoga County Common Pleas Court, plaintiff alleged, among other things, that the defendants had discriminated against her in the terms and conditions of her employment by subjecting her to a hostile work environment. Moving for a partial summary judgment, the defendants argued that the judgment previously rendered in plaintiff's case by the federal court was res judicata and barred plaintiff from belatedly advancing her hostile work environment claim in this action. The trial court granted the defendants' motion for partial summary judgment and barred plaintiff from proceeding on her hostile work environment claim. Plaintiff contends that the court erred in granting the defendants a partial summary judgment on this claim. We disagree.
Under Civ.R. 56(C), summary judgment is appropriate when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc.
(1998), 82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. The moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v.Hall (1997), 77 Ohio St.3d 421, 430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also,Mitseff v. Wheeler (1988), 38 Ohio St.3d 112. We review the trial court's ruling de novo and use the same standard that the trial court applies under Civ.R. 56(C). Lee v. Sunnyside Honda (1998), 128 Ohio App.3d 657,660; N. Coast Cable L.P. v. Hanneman (1994), 98 Ohio App.3d 434, 440.
Whether the judgment rendered by the federal court was entitled to preclusive effect here is determined by federal law. Musa v. GillettCommunications, Inc. (1997), 119 Ohio App.3d 673, 682. In Wilkins v.Jakeway (C.A.6, 1999), 183 F.3d 528, the court explained the federal law of preclusion:
 The doctrine of res judicata includes two separate concepts — issue preclusion and claim preclusion. Migra v. Warren City School Dist. Bd. of Educ. (1984), 465 U.S. 75, 77, n. 1. Claim preclusion or true res judicata, the issue before this panel, refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Id. This Circuit has articulated that a claim will be barred under the doctrine of claim preclusion if the following four elements are present: (1) a final decision on the merits; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action.
Wilkins v. Jakeway, 183 F.3d at 532.
In the instant case, plaintiff does not dispute the parties in her federal and state lawsuits are identical. Plaintiff maintains, however, that res judicata did not bar her hostile work environment claim here, because (1) her hostile work environment claim was not a cause of action in her federal lawsuit and was not litigated in that case, and (2) there was no final judgment on the merits because the federal court granted plaintiff's motion to dismiss her case without prejudice pursuant to Fed.R.Civ.P. 41(a)(2). Neither argument has merit.
As to plaintiff's first argument, "the law of preclusion bars a plaintiff from bringing, in a subsequent action, new allegations relating to the same underlying facts that could have been brought in the former action against the defendant." Catz v. Chalker (C.A.6, 1998), 142 F.3d 279,287. A litigant therefore may not split her cause of action by asserting in a second lawsuit different reasons for the same relief sought in an earlier lawsuit. See Davis v. Mabee (C.A.6), 32 F.2d 502, cert. denied
(1929), 280 U.S. 580. Because the same facts on which plaintiff predicated her gender discrimination and retaliation claims in federal court were the basis for plaintiff's hostile work environment claim in state court, plaintiff was obligated to assert her hostile work claim in her federal court proceedings or be precluded from asserting it later. See Gregory v. Widnall (C.A.9, 1998), 153 F.3d 1071 (res judicata barred subsequent hostile work environment claims relating to precisely the same incidents that were the basis for prior race and gender discrimination and retaliation claims). See also Rivers v. Barberton Bd. of Educ.
(C.A.6, 1998), 143 F.3d 1029 (res judicata barred plaintiff from asserting in second lawsuit Title VII claims that could have been litigated in prior suit). Plaintiff does not explain why her hostile work environment claim was not and could not have been asserted in her first lawsuit.[4]
There remains the question, however, whether the federal court rendered a final judgment on the merits.[5] The district court granted summary judgment to the defendants on all claims excepting that which alleged the defendants discriminated against plaintiff when they failed to promote her in 1993. The court subsequently granted plaintiff's motion to dismiss her action without prejudice pursuant to Fed.R.Civ.P. 41(a)(2). Plaintiff asserts that the voluntary dismissal without prejudice dissolved the federal court's earlier summary judgment ruling and precluded it from attaining finality. We cannot agree.
Sixth Circuit precedent convinces us that when a summary judgment is granted as to some but not all claims and the plaintiff then voluntarily dismisses without prejudice the remaining claim or claims, the plaintiff's voluntary dismissal imparts finality to the summary judgment ruling. In Hicks v. NLO, Inc. (C.A.6, 1987), 825 F.2d 118, the district court awarded summary judgment to the defendants on all claims except the plaintiff's wrongful death claim against NLO. The plaintiff voluntarily dismissed without prejudice the wrongful death claim against NLO and appealed the adverse summary judgment ruling. The defendants moved to dismiss the appeal for lack of finality, but the court of appeals held that the plaintiff's voluntary dismissal, approved by the trial court, of the only claim which remained unadjudicated imparted finality to the district court's earlier order granting a partial summary judgment. See also Coffey v. Foamex L.P. (C.A.6, 1993), 2 F.3d 157, 159 (voluntary dismissal of pending claims rendered earlier summary judgment order final); General Aviation, Inc. v. Cessna Aircraft Co. (C.A.6, 1990),915 F.2d 1038, 1040 (same).[6] More recent Sixth Circuit precedent confirms that court's distaste for attempts to avoid the consequence of adverse judgments rendered with detailed findings of fact and conclusions of law by reasserting such claims in a different forum. See Birgel v.Board of Commrs. of Butler County, Ohio (C.A.6, 1997), 125 F.3d 948,cert. denied (1998), 118 S.Ct. 1038; Employees Own Federal Credit Unionv. City of Defiance (C.A.6, 1985), 752 F.2d 243. The Birgel court observed: "[W]e will not permit a plaintiff to abandon his failing state court suit and file a virtually identical suit in federal court in hopes of achieving a more favorable result." Birgel, 125 F.3d at 952.
Under this precedent, the district court's judgment awarding partial summary judgment to the defendants became final when, with the district court's approval, plaintiff voluntarily dismissed her remaining claim without prejudice. Because the adverse ruling operated as a final judgment rendered on the merits between the same parties on the same claim or demand, it must be accorded preclusive effect in subsequent litigation. Applying res judicata here, moreover, did not impose an unfair hardship on plaintiff because she was in no worse position when she re-filed this action in state court than she was when she voluntarily chose to leave her federal forum.[7]
Plaintiff's reliance on Hall v. Gibson Greetings, Inc. (S.D.Ohio, 1997), 971 F. Supp. 1162, is misplaced because the issue in that case was whether a partial summary judgment followed by a voluntary dismissal of Ohio litigation had any preclusive effect under Ohio law. The instant case, by contrast, involves the question of whether a partial summary judgment followed by a voluntary dismissal of federal litigation has any preclusive effect under federal law. As we have found, Sixth Circuit precedent convinces us that it does.
We therefore conclude the trial court correctly determined that resjudicata barred plaintiff from asserting a claim for hostile work environment discrimination in this case. Accordingly, we overrule plaintiff's second assignment of error.
Plaintiff's third assignment of error contends:
 III. THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT AND LIMITED THIS CASE TO AN APRIL 1993 PROMOTION AND RETALIATION CLAIM.
This assignment of error is not well taken.
While plaintiff's case was pending in federal court, that court determined it had jurisdiction to consider only the decision not to promote plaintiff to the position of Business Manager in Extrusions in 1993. The court found that issues of fact existed as to that promotion, which ultimately went to Patrick Tully. After the district court granted plaintiff's request for a voluntary dismissal without prejudice under Fed.R.Civ.P. 41(a)(2) and she filed this action in the Cuyahoga County Common Pleas Court, plaintiff maintained that the defendants had wrongly passed her over for other job promotions before the Tully promotion. The defendants moved for summary judgment as to those other promotions, contending that there were legitimate nondiscriminatory reasons for each of the promotions about which plaintiff complained. Plaintiff opposed the motion but the trial court granted it, thus restricting plaintiff to proceed at trial only on her gender discrimination and retaliation claims, which asserted that she was wrongly denied the promotion that went to Tully. For her third assignment of error, plaintiff contends the court erred in granting partial summary judgment to the defendants and thus in limiting her case to the April 1993 promotion. We disagree.
As noted previously, we review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56(C).Lee v. Sunnyside Honda, supra; N. Coast Cable L.P. v. Hanneman, supra. In deciding whether an evidentiary conflict exists so as to preclude summary judgment, the evidence and the inferences to be drawn from the underlying facts contained in the evidentiary materials must be construed in a light most favorable to the party opposing the motion. Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485; Hood v. Diamond Products, Inc.
(1996), 74 Ohio St.3d 298, 303-304.
For their summary judgment motion, the defendants argued that they had legitimate nondiscriminatory reasons for promoting other better qualified individuals and that plaintiff could not show those reasons to be mere pretext for unlawful discrimination. In support, the defendants submitted a detailed factual analysis justifying each promotion. Among other things, the defendants explained that plaintiff was not considered for three positions because they occurred within one year of plaintiff's own promotion and Kickel's policy required an employee to complete one full year before being considered for another promotion. The defendants justified four other decisions on the grounds that the persons selected were better qualified than the plaintiff because of their superior credentials and work history. Without evidence suggesting that the proffered reasons were mere pretext, the defendants maintained they were entitled to a summary judgment as to those other promotions.
In response, the plaintiff insisted that because issues of fact existed as to whether the defendants discriminated against her when Tully was named Business Manager in Extrusions, issues of fact must likewise exist as to the other promotions she did not receive. While plaintiff maintained that she was qualified to be a manager and criticized the defendants' practices, she did not controvert the facts identified by the defendants which explained the reasons why others were promoted and plaintiff was not.
To prove the defendants' reasons were mere pretext for unlawful discrimination, plaintiff could show that (1) the proffered reasons had no basis in fact, or (2) the proffered reasons did not actually motivate the job decision, or (3) the proffered reasons were insufficient to motivate the job decision. See Frantz v. Beechmont Pet Hosp. (1996),117 Ohio App.3d 351, 359. See, also, Manzer v. Diamond Shamrock Chem.Co. (C.A.6, 1994), 29 F.3d 1078. Plaintiff's response to the defendants' motion for partial summary judgment did not point to any evidence in the record contesting the defendants' legitimate nondiscriminatory reasons for those promotional decisions. A dispute in facts as to the Tully promotion hardly shows any factual disputes over the other promotions. After construing the evidence most favorably to the plaintiff, we conclude the plaintiff did not sustain her reciprocal burden of specificity.
Plaintiff's reliance on Sutherland v. Nationwide Gen. Ins. Co. (1994),96 Ohio App.3d 793, is unavailing because the issue in that case was whether the plaintiff established a prima facie case of sex discrimination. In the instant case by contrast, the issue is whether the plaintiff created a material issue of fact to show pretext after she established her prima facie case and the defendants offered their legitimate nondiscriminatory reasons. From our review of the record, plaintiff did not identify any genuine issue of material fact to controvert the defendants' proffered reasons for the other promotions.
And unlike the subjective criteria which created a factual question as to pretext in Berry v. Gerneral Motors Corp. (D.Kan., 1992),796 F. Supp. 1409, the criteria used by the defendants here were based on objective facts, namely: (1) the requirement that the employee complete one full year before being considered for further promotion; and (2) the nature and extent of one's credentials and prior work experience. Plaintiff failed to identify evidence in the record questioning the legitimacy of the defendants' criteria.
Because plaintiff did not demonstrate a material question of fact disputing the legitimate nondiscriminatory reasons advanced by the defendants for not promoting plaintiff prior to the Tully promotion, the defendants were entitled to a summary judgment as to those other promotions. Accordingly, the trial court did not err in granting the defendants a partial summary judgment as to those promotions, and plaintiff's third assignment of error is therefore overruled.
Plaintiff's fourth assigned error states:
 IV. THE TRIAL COURT ERRED WHEN IT GRANTED A DIRECTED VERDICT ON PLAINTIFF-APPELLANT'S RETALIATION CLAIM.
This assignment of error is not well taken.
Plaintiff's retaliation claim was that the defendants selected Tully over plaintiff in April 1993 in retaliation for plaintiff's participation in the Women's Network and, in particular, for her participation in the January 8, 1993 meeting with Don Knechtges. The trial court directed a verdict in favor of the defendants on this claim at the close of all the evidence because there was no evidence showing Dan Kickel was aware of plaintiff's activity when he selected Tully. Because the plaintiff has failed to cite to such evidence in the record, we find no error by the court in taking this claim away from the jury.
Civ.R. 50(A)(4) provides:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
A motion for a directed verdict presents a question of law which tests "the legal sufficiency of the evidence to take the case to the jury."Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 119 (quoting Rutav. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68). The trial court must construe the evidence most strongly in favor of the party against whom the motion is directed and sustain the motion only if reasonable minds could come to but one conclusion, adverse to that party, upon the evidence submitted. See Wise v. Timmons (1992), 64 Ohio St.3d 113, 116. The court may not consider the weight of the evidence or the credibility of the witnesses in deciding the motion. Wagner, supra. See, also,Strother v. Hutchinson (1981), 67 Ohio St.2d 282. Thus in O'Day v. Webb
(1972), 29 Ohio St.2d 215, the court declared:
 It is the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue, or, conversely, to withhold an essential issue from the jury when there is not sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue.
Id., syllabus at para. 4. The question here is whether there was insufficient evidence to submit plaintiff's claim for retaliation to the jury.
To establish actionable retaliation under R.C. 4112.02(I), the evidence must show that (1) the employee was a member of a protected class or engaged in a protected labor activity; (2) the employee's protected status or activity was known to the employer; (3) the employer took adverse employment action against the employee and stated reasons that were not the true retaliatory reason; and (4) there is a causal connection between the protected activity and the adverse employment action. See Mack v. B.F. Goodrich Co. (1997), 121 Ohio App.3d 99; Rudyv. Loral Defense Sys. (1993), 85 Ohio App.3d 148. We agree that plaintiff presented insufficient evidence to send her retaliation claim to the jury.
In particular, the evidence showed that Dan Kickel made the decision to promote Tully. There was no evidence, however, to suggest that Kickel was even aware the plaintiff had engaged in any protected labor activity. Consequently, there was no evidence to suggest that Kickel failed to promote plaintiff because she engaged in protected activity.
Plaintiff relies on evidence that she and other female employees met with Don Knechtges three months before Kickel promoted Tully. But a three-month lapse between protected activity and adverse action is, alone, insufficient to establish a causal connection. Briner v. NationalCity Bank (Feb. 14, 1994), Cuyahoga App. No. 64610, unreported, at 11. See also Cooper v. City of North Olmsted (C.A.6, 1986), 795 F.2d 1265.
More importantly, there was no evidence that Kickel had any knowledge of that meeting or any other protected labor activity in which the plaintiff may have been engaged. There was no evidence that Knechtges had any input into Kickel's decision. Thus there was no evidence to support a causal connection between any protected labor activity and Kickel's decision to promote Tully.
In Peters v. B. F. Transfer Co. (1966), 7 Ohio St.2d 143, the court said at paragraph eight of the syllabus:
 Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as to deny to a citizen his trial by jury when he has the right.
Because there was no evidence establishing that any protected labor activity in which plaintiff engaged was known to Kickel or that there was a causal connection between plaintiff's activity and Kickel's decision, the trial court correctly determined that there was insufficient evidence presented to submit this claim to the jury. The fourth assignment of error is accordingly overruled.
Plaintiff's last assignment of error asserts:
 V. THE TRIAL COURT ERRED WHEN IT REFUSED TO INTRODUCE AND STRUCK CIRCUMSTANTIAL AND DIRECT EVIDENCE OF DISCRIMINATION.
This assignment of error is without merit.
Plaintiff complains that the trial court erred in excluding certain evidence at trial. The admission or exclusion of evidence rests generally within the sound discretion of the trial court, and a reviewing court may reverse the decision only upon the showing of an abuse of that discretion. See Wightman v. Consolidated Rail Corp. (1999),86 Ohio St.3d 431, 437; Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296, 299. Irrelevant evidence is not admissible. See Evid.R. 402. Moreover, under Evid.R. 403(A), relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury."
In this case, plaintiff asserts that the court wrongly excluded evidence that the defendants discriminated against other female employees as shown by their absence from business and upper-level management positions. Even if evidence of other acts were admissible for a proper purpose under Evid.R. 404(B), plaintiff's "other acts" evidence did not involve the only relevant person, Kickel. Such evidence, therefore, cannot be tied logically or reasonably to Kickel's decision to promote Tully over plaintiff. The cases on which plaintiff relies, by contrast, involved other acts evidence involving the allegedly discriminatory decisionmaker. See, e.g., Robinson v. Runyon (C.A.6, 1998), 149 F.3d 507
(evidence showing decisionmaker allegedly aware of racially offensive material but did nothing to stop its dissemination in workplace was admissible, whereas other evidence unrelated to decisionmaker was inadmissible); Shattuck v. Kinetic Concepts, Inc. (C.A.5, 1995),49 F.3d 1106 (supervisor's discriminatory statements to others relevant to supervisor's treatment of plaintiff).
Moreover, the trial court could reasonably exclude such collateral matters if those acts would essentially require a mini-trial to determine what occurred and whether it could be tied logically to what occurred to plaintiff. In Thompson v. Cuyahoga Community College (May 13, 1999), Cuyahoga App. Nos. 72626, 72627, unreported, we upheld the exclusion of similar "other acts" evidence because the evidence was irrelevant or, if at all relevant, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Similarly, the trial court here could reasonably conclude that the relevance of plaintiff's "other acts" evidence was tenuous at best and unfairly prejudicial at worst. We find no error in its exclusion.
And because plaintiff's case was limited to whether the defendants committed unlawful discrimination by promoting Tully instead of plaintiff, evidence concerning other promotions or the alleged deficiencies of males who received those promotions was not relevant to plaintiff's case. We therefore find no abuse of discretion in the exclusion of that evidence.
Because we find no prejudicial error by the trial court in excluding plaintiff's irrelevant or at best marginally relevant evidence, we overrule her fifth assignment of error.
The judgment is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, J., and KENNETH A. ROCCO, J., CONCUR.
[1] In April 1993, Geon became a separate entity.
[2] "[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."Hampel v. Food Ingredients Specialties (2000), 89 Ohio St.3d 169, 175.
[3] We note in passing that not long after this case was tried, the Jury Instructions Committee of the Ohio Judicial Conference, acknowledging the potential for confusion with the shifting burdens underMcDonnell Douglas, drafted a standard jury instruction to state simply that the employee must prove by the greater weight of the evidence that a legally protected classification was a determining factor for the challenged conduct. See 2 Ohio Jury Instructions (2000) 149, Section 266.03.
[4] Plaintiff cites Ameigh v. Baycliffs Corp. (1998), 81 Ohio St.3d 247,250, for the proposition that "an issue must be actually and necessarily litigated for res judicata to apply to that issue in a later proceeding." As previously noted, however, the case at bar involves claim preclusion, not issue preclusion, and claim preclusion bars the relitigation of claims that were or could have been litigated in the prior action.
[5] The final decision on the merits need not be that of the claim sought to be precluded subsequently. In Rivers v. Barberton Bd. ofEduc., supra, the court observed: "It is of no consequence here whether the Title VII claim was dismissed on the merits in Rivers I so long as some relevant portion of Rivers I was dismissed on the merits."143 F.3d at 1032.
[6] The circuit courts may be in conflict on this issue. See Chappellev. Beacon Communications Corp. (C.A.2, 1996), 84 F.3d 652 (collecting cases). But because plaintiff's case was determined by a court within the Sixth Circuit, we have looked to that circuit's precedents for guidance.
[7] Had plaintiff instead re-filed her action in federal court, we have no reason to doubt that her re-filed action would have picked up right where she left off, so plaintiff again would have been in no worse position.