RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0325P (6th Cir.)
File Name: 03a0325p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

JOEY L. MITCHELL,
*Plaintiff-Appellant,*

*v.*

No. 01-5571

GLENN CHAPMAN, et al.,
*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 00-00179—Karl S. Forester, Chief District Judge.

Argued: February 7, 2003

Decided and Filed: September 11, 2003

Before: GILMAN and GIBBONS, Circuit Judges;
ECONOMUS, District Judge.[*]

———————

**COUNSEL**

**ARGUED:** James M. Morris, MORRIS & MORRIS,
Lexington, Kentucky, for Appellant. Sharon Swingle,

———————

[*] The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE SECTION, Washington, D.C., for Appellees. **ON BRIEF:** James M. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellant. Sharon Swingle, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE SECTION, Washington, D.C., for Appellees.

———————

**OPINION**

———————

PETER C. ECONOMUS, District Judge.

## I. OVERVIEW

The Appellant, Joey L. Mitchell ("Appellant" or "Mitchell"), appeals the district court's grant of summary judgment to his employer, the United States Postal Service ("USPS"), and three USPS employees, in this action alleging various civil rights claims.

Mitchell advances three arguments on appeal: (1) the district court misapplied the doctrine of claim preclusion as a means to bar the claims alleged against the defendants in the defendants' official capacities; (2) the district court should have allowed his 42 U.S.C. § 1983 claims to proceed under the holding of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); and (3) the district court erred in interpreting the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654 (1994), as to preclude individual liability claims asserted against federal agency supervisors.

For the reasons that follow, we **AFFIRM** the decision of the district court.

## II.  BACKGROUND

### A.  FACTUAL HISTORY

On July 8, 1995, Mitchell began his employ as a letter carrier at the United States Post Office located in Paris, Kentucky (the "Paris Facility"). (J.A., 23, 166.)  Prior to and throughout his employment, Mitchell suffered from chronic neck pain arising from an injury that he sustained while serving in the United States Navy. (J.A., 23, 54, 57-58,166.)

On November 11, 1996, Mitchell's treating physician, Dr. Ballard Wright ("Dr. Wright"), certified that Mitchell's neck pain was a chronic serious illness pursuant to the FMLA. (J.A., 24, 54, 59, 166.)  Dr. Wright's certification indicated that the neck injury required Mitchell's occasional absence from work. (J.A., 24, 54, 59,166.)

On February 12, 1997, Mitchell submitted a formal request to the Paris Facility Postmaster, Richard A. Derrickson ("Derrickson"), requesting a transfer from his letter carrier position to the position of clerk. (J.A., 16-17, 24, 77, 85.) Derrickson took no immediate action on the transfer request.

Several months later, on May 12, 1997, Mitchell failed to appear during his regularly scheduled shift. (J.A., 17, 24, 116.)  When Mitchell returned to work the following day, his acting supervisor, Glenn Chapman ("Chapman"), verbally reprimanded Mitchell for the non-excused absence. (J.A., 17, 24, 116, 167.)  Chapman indicated to Mitchell that poor attendance was a significant factor that could detrimentally impact Mitchell's transfer request. (J.A., 45, 116, 167.)

In response, Mitchell explained that his absence was the result of a re-injury to his neck that he sustained while carrying boxes of canned goods for a charity event.  During the ensuing volatile discussion, Mitchell declared his intention to designate the absence as FMLA leave and referred to Dr. Wright's prior certification. (J.A., 24, 45, 167,

173.)  Mitchell further informed Chapman that he would have to file for permanent disability if compelled to continue working as a letter carrier. (J.A., 40, 45, 116-17.)  Ultimately, Mitchell designated the eight hours as unscheduled sick leave. (J.A., 24, 168.)

Chapman immediately alerted Derrickson to Mitchell's comments regarding the neck injury. (J.A., 77, 116-17.)  In response to this information, Derrickson instructed Mitchell to receive a medical fitness-for-duty examination ("FFD Exam").[1]  (J.A., 17, 24, 78-79, 117, 169.)  Derrickson additionally transferred Mitchell from letter carrier to temporary clerk duties pending the results of the FFD Exam. (J.A., 24, 78, 117, 167-68.)

On May 15, 1997, Mitchell provided to Derrickson a letter from Dr. Wright indicating that he was "medically cleared to perform his duties as a letter carrier for the U.S. Postal Service with no restrictions." (J.A., 12, 17, 24, 54, 60, 78-79, 93, 168.)  Dr. Wright's letter further indicated that, "if a less physically strenuous position becomes available . . . [Mitchell should] be considered for such a position so as to not exacerbate his head and neck pain." ( J.A., 54, 60, 93.) Derrickson refused to return Mitchell to the letter carrier position pending the results of the FFD Exam. (J.A., 24, 79, 168.)

On May 20, Mitchell's collective bargaining representative, the National Association of Letter Carriers, AFL-CIO (the "Union"), filed a grievance (the "Grievance") on Mitchell's behalf.  The Grievance alleged violations of the FMLA and parallel provisions of the collective bargaining agreement (the "CBA") entered into between the Union and the USPS. (J.A., 17, 160, 169.)

---

[1]Postal regulations permitted management to order FFD Exams by a physician selected by the USPS "at any time and repeat as necessary, to safeguard the employee." (J.A., 78, 89-92.)

On May 23, 1997, Dr. Robert Davenport ("Dr. Davenport"), a physician under contract with the USPS, conducted a FFD Exam of Mitchell. (J.A., 13, 17, 24-25, 40, 45, 54, 61-66, 79, 169.)   Dr. Davenport rendered three determinations regarding Mitchell's condition: (1) Mitchell maintained the ability to perform letter carrier duties so long as he refrained from carrying mail with a satchel; (2) Mitchell could continue to perform clerk duties and maintain a low risk for injury; and (3) Mitchell should be referred to a neurosurgeon, Dr. John Gilbert ("Dr. Gilbert"), for further evaluation. (J.A., 25, 54, 66.)

That same day, the USPS denied the Grievance. (J.A., 160.) Pursuant to the CBA, the Union initiated Step 2 of the grievance procedure requesting that the USPS award Mitchell backpay, sick / annual leave, and reinstatement to letter carrier duties. (J.A., 13, 161.)

By letter dated June 9, 1997, the USPS denied the requested relief stating, "In the interest of the Grievant's health and safety, Management has taken [Mitchell] out of the situation causing him physical problems, pending further evaluation. Therefore in the absence of any contractual violation, the grievance is denied." (J.A., 161.)  The Union thereafter initiated Step 3 of the grievance procedure. (J.A., 13, 162-64.)

A third physician, Dr. Gilbert, examined Mitchell on June 30, 1997 and issued a report returning Mitchell to work duty without restrictions.   (J.A., 13, 17, 25, 69, 169.) Subsequently, Naewana Nickles ("Nickles"), a USPS Occupational Health Nurse Administrator responsible for reviewing medical evaluations of USPS employees, received Dr. Gilbert's report. (J.A., 13, 25, 55.) Nickles found the report deficient in several respects and requested that Dr. Gilbert specifically address whether Mitchell could perform "all of the essential functions of a City Carrier without risk of hazard to self or others." (J.A., 13, 18, 25, 55, 70-71, 169-71.)

Dr. Gilbert responded to Nickles's request as follows:

[B]ased on my exam and discussion with the patient and the fact that the patient tells me that he feels he can do his job without restrictions, I feel this [sic] is not unreasonable for him to perform his job without restrictions.  If the [USPS] would like a more detailed assessment of restrictions, . . . we would need to proceed with a functional capacity evaluation done by a licensed physical therapist.

I note in your records that [Mitchell] has said that the stresses from carrying a satchel cause him problems on his neck. If this is indeed true, then I would recommend that he not carry the satchel. However, the patient did not tell me this. He told me he felt he could do his job without restrictions. If you want to be on the safe side and if it is true that the patient feels that the satchel's giving him problems, then we need to get rid of the satchel.

(J.A., 25, 55, 72.)

Nickles ultimately reported to Derrickson that Mitchell "[c]ould continu[e] carrying mail if [Mitchell] doesn't use [a] satchel." (J.A., 55, 74, 79.)  Derrickson did not, however, return Mitchell to full letter carrier duties.  (J.A., 79.)

On August 11, 1997, Mitchell submitted a second request for transfer to a full-time clerk position. (J.A., 13, 18, 25, 80, 95.)  Derrickson approved the request on August 19, 1997. (J.A., 13, 25, 80, 95.)

On August 25, 1997, Dr. Gilbert issued a supplemental report to the USPS indicating that Mitchell "can't work with a neck harness because it puts him at a high risk" for injury. (J.A., 55, 75.) Dr. Gilbert further indicated that he examined a model USPS waist harness for carrying mail that "transfers the weight from the bag from the shoulder to the waist" and

that Mitchell was at a "low risk" of injury while using the waist harness. (J.A., 13-14, 55, 75.) Consequently, Dr. Gilbert "recommended releasing Mr. Mitchell to full duty restricted to using the harness provided to [him] by the [USPS] which transfers the weight of the bag to the waist rather than the shoulder." (J.A., 13-14, 55, 75.)

Mitchell alleges that he attempted to withdraw his transfer request based on Dr. Gilbert's recommendation -- however, Derrickson refused the withdrawal. (J.A., 174-75.) Derrickson denies that Mitchell submitted such a request. (J.A., 80.) Mitchell's transfer to the clerk position became effective August 30, 1997. (J.A., 14, 25, 80, 96.)

## B. PROCEDURAL HISTORY

*The EEO Proceedings*

Mitchell contacted an Equal Employment Opportunity ("EEO") counselor on October 30, 1997 alleging that Derrickson's refusal to return him to his letter carrier position constituted disability discrimination in violation of the FMLA and the Disabled Veterans Act.[2] (J.A., 11, 14, 25, 40, 42-46.)

---

[2]Title twenty-nine of the Code of Federal Regulations, chapter fourteen, part 1614, establishes an extensive dispute resolution process to address a federal employee's charge of discrimination. This dispute resolution system requires "a complaining party to pursue administrative relief prior to court action, thereby encouraging more expedient, less formal, and less expensive resolution of disputes within the Federal Government and outside of court." *West v. Gibson*, 527 U.S. 212, 218-19 (1999). In particular, 29 C.F.R. § 1614.105 provides, in relevant part:

(a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action,

On June 6, 1998, Mitchell filed a formal EEO complaint of discrimination ("EEO Complaint) with the USPS alleging disability discrimination "based on accommodation."[3] (J.A., 12, 14, 26, 41, 47.)

The USPS dismissed as untimely Mitchell's EEO Complaint, determining that Mitchell initiated contact with an EEO counselor beyond the forty-five day period provided in 29 C.F.R. 1614.105. (J.A., 12, 26, 45, 48-51.) Specifically, the USPS determined that Mitchell had not consulted with the EEO counselor until sixty-six days after the alleged discriminatory refusal to reinstate him as a mail carrier, and sixty days after the effective date of his transfer to a clerk position. (J.A., 45, 48-51.) Mitchell did not administratively appeal the USPS's decision.

---

within 45 days of the effective date of the action.

(2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105 (2003).

[3]Twenty-nine C.F.R. §1614.106 provides, in pertinent part:

(a) A complaint must be filed with the agency that allegedly discriminated against the complainant.

(b) A complaint must be filed within 15 days of receipt of the notice required by § 1614.105 (d), (e) or (f) [provisions regarding the completion of informal meetings with an EEO counselor].

*Mitchell I*

On November 17, 1998, Mitchell filed a complaint in the United States District Court for the Eastern District of Kentucky against the USPS and the Postmaster General, William Henderson ("Henderson"), alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. §§ 700-796 (1994), and the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213 (1994). *See Mitchell v. Henderson ("Mitchell I"),* No. 98-469 (E.D. Ky. filed Nov. 1, 1998), at (J.A., 97 - 104). Mitchell's complaint sought relief predicated on two events: (1) the defendants' purported refusal of his request to return to letter carrier duties with the accommodation of a waist harness; and (2) his transfer to a lesser-paying clerk's position after requesting FMLA leave. *Mitchell I,* at (J.A., 97 - 104).

The district court granted summary judgment in favor of the defendants, resting its determination on Mitchell's failure to contact an EEO Counselor within forty-five days of the allegedly discriminatory conduct. (J.A., 106-12.)

*Resolution of the Grievance*

Several weeks later, on May 25, 1999, the Union and the USPS settled Mitchell's Step 3 Grievance. (J.A., 165.) The terms of the settlement awarded Mitchell backpay during the period that he served as a temporary clerk, as well as additional sick / vacation leave. (J.A., 165.)

*Mitchell II*

Nearly a year later, Mitchell filed a complaint in the United States District Court for the Eastern District of Kentucky against the USPS, Henderson, Chapman, Derrickson, and Nickles, where he re-asserted violations of the Rehabilitation Act and the ADA, as well as alleged additional claims pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"),

42 U.S.C. §§ 2000a-2000h (1994); the FMLA; 42 U.S.C. § 1983; the Fourteenth Amendment to the United States Constitution; and the Kentucky Civil Rights Act ("KCRA"), KY. REV. STAT. ANN. §§ 344.010-.990. *See Mitchell v. Chapman (Mitchell II),* No. 00-179 (E.D. Ky. filed May 15, 2000), at (J.A., 6-22).

The defendants thereafter moved for the dismissal of the complaint pursuant to FED. R. CIV. P. 12 (b)(1), (2), (3), and (6), or in the alternative, for summary judgment pursuant to FED. R. CIV. P. 56 (b).[4] In response, Mitchell conceded that dismissal was proper as to all claims asserted against Henderson and all ADA claims. (J.A., 138-39, 143, 149.) The district court accordingly granted judgment in favor of the defendants on the conceded claims. (J.A., 28.)

The district court further determined that the doctrine of claim preclusion rendered its decision in *Mitchell I* as a bar to Mitchell's subsequent claims against the USPS, and all claims asserted against Chapman, Derrickson, and Nickles in their official capacities. (J.A., 29-34.) The district court declined, however, to invoke claim preclusion as to Mitchell's individual capacity claims. (J.A., 30-32.)

The district court then considered the individual liability of Chapman, Derrickson, and Nickles. The district court concluded that neither Title VII, the Rehabilitation Act, nor

---

[4]Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief may be granted, matters outside of the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provide in Rule 56.

FED. R. CIV. P. 12 (b)(6). As the district court considered a series of affidavits and exhibits attached to the motion, it converted the motion to one seeking summary judgment.

Kentucky law imposed individual liability for discriminatory conduct. (J.A., 35-36.) Consequently, the district court entered judgment in favor of the defendants on said claims.

The district court also awarded judgment to the defendants on Mitchell's individual capacity FMLA claims. In so doing, the district court rejected Mitchell's contention that the statute imposed individual liability on public employers. (J.A., 36-37.)

The district court further awarded judgment to the defendants on Mitchell's Section 1983 claims, reasoning: (1) federal employees do not act "under color of state law" as required by the statute; and (2) Mitchell failed to comply with the one-year statute of limitations for asserting Section 1983 claims. (J.A., 34-35.) Moreover, the district court held that the Fourteenth Amendment was inapplicable to claims arising from actions of federal officials and employees. (J.A., 35.)

Accordingly, the district court granted the defendants' motion for summary judgment. The instant appeal ensued. (J.A., 39.)

## III. STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo. *See Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir. 1991). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV. LAW AND ANALYSIS

### A. Claim Preclusion

Mitchell challenges the district court's determination that the principles of claim preclusion, or res judicata,[5] rendered the judgment in *Mitchell I* as a bar to *Mitchell II*. This Court reviews the dismissal of a case on claim preclusion grounds de novo. *See Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994)).

Claim preclusion is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment. *See Montana v. United States*, 440 U.S. 147, 153 (1979). It precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim or defense that should have been raised, but was not, in the prior suit. *See Stern v. Mascio*, 200 F.3d 600, 608 (6th Cir.2001) (citing *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660-61 (6th Cir.1990)). Claim preclusion only arises, however, in the presence of the following four elements: (1) where the prior decision was a final decision on the merits; (2) where the present action is between the same parties or their privies as those to the prior action; (3) where the claim in a present action should have been litigated in the prior action; and (4) where an identity

---

[5] In *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75 (1984), the United States Supreme Court expressed its preference for the use of the term "claim preclusion," rather than the more traditionally utilized term "res judicata." *Migra*, 465 U.S. at 77 n.1. Res judicata generally includes two separate concepts - claim preclusion and issue preclusion. Claim preclusion, or true res judicata, refers to effect of a prior judgment in foreclosing a subsequent *claim* that has never been litigated, because of a determination that it should have been advanced in an earlier action. *Id.* Issue preclusion, on the other hand, refers to the foreclosure of an issue previously litigated. *Id.*

exists between the prior and present actions. *See Kane*, 71 F.3d at 560.

Here, the central dispute involves the first three elements of claim preclusion - whether there was a final decision on the merits, whether the two actions were filed against the same parties or their privies, and whether the claims in *Mitchell II* should have been brought in *Mitchell I*.[6] The Court shall address each element in turn.

### 1.    Decision on the Merits

The district court determined that its judgment in *Mitchell I* resting on Mitchell's failure to fulfill a condition precedent to suit -- specifically, Mitchell's failure to pursue informal resolution with an EEO counselor within forty-five days of an alleged discriminatory act -- constituted a decision on the merits for claim preclusion purposes. In reaching this conclusion, the district court acknowledged the lack of precedent from this Court regarding whether a dismissal for failing to fulfill a condition precedent is a decision on the merits.[7] (J.A., 29.) In the absence of controlling authority, the district court reasoned: (1) the deadline for consulting with an EEO counselor was similar to a statute of

---

[6]Mitchell concedes the fourth element - whether there is an identity between the claims asserted in *Mitchell I* and *Mitchell II*. Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981). It is undisputed that the complaints in *Mitchell I* and *Mitchell II* allege identical facts, differing only in the introductory paragraphs.

[7]*See Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998) ("Rivers urges that a dismissal for failure to satisfy a condition precedent should not be considered an adjudication on the merits for claim preclusion purposes . . . [W]e need not decide this question today.").

limitations;[8] (2) a dismissal on statute of limitations grounds was an adjudication on the merits for claim preclusion purposes;[9] and (3) a dismissal of plaintiff's claims for failure to contact an EEO counselor therefore was a final decision on the merits for claim preclusion purposes. (J.A., 29-30.)

The district court's analysis rests on sound legal authority. It is well-established that a party's exhaustion of administrative processes for filing a claim of discrimination is a condition precedent to filing suit in the district court, rather than a jurisdictional prerequisite. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982) (holding that the administrative provisions requiring an employee to pursue a charge of discrimination with the EEOC are conditions precedent to suit subject to waiver, tolling and estoppel); *see also Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 95 (1990) (extending *Zipes* to administrative requirements for federal employees bringing suits against federal agencies). This Court has held that a federal employee's administrative obligation to consult with an EEO counselor within a particular time period is a precondition to filing suit subject to equitable tolling, waiver and estoppel. *See Boddy*, 821 F.3d at 350 (citing *Zipes*, 455 U.S. 385). The distinction between a jurisdictional prerequisite and a condition precedent is of significant analytical import because a dismissal for lack of subject matter jurisdiction is not a dismissal on the merits for claim preclusion purposes. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986) ("Normally, Rule 12(b)(6) judgments are dismissals on the merits and Rule 12(b)(1) dismissals are not.") (Citation omitted).

---

[8]Citing *Boddy v. Dean*, 821 F.2d 346, 350 (6th Cir. 1987).

[9]Citing *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978).

It further is well-established that conditions precedent are similar to statutes of limitations. *See Truitt v. County of Wayne*, 148 F.3d 644, 646-47 (6th Cir. 1998) ("[W]e hold that [an administrative condition precedent requiring a plaintiff to file suit within ninety days of receiving a right to sue letter from the EEOC] is not a jurisdictional requirement but, instead, is a timing requirement similar to a statute of limitations, subject to waiver, estoppel and equitable tolling."). Moreover, a dismissal for failing to comply with a statute of limitations is a decision on the merits for claim preclusion purposes. *See Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981). Therefore, the district court did not make an impermissible leap in analogizing a dismissal for failing to fulfill a condition precedent to a dismissal arising from a failure to comply with the statute of limitations.

*The limitations of the district court's approach*

While the district court reached the correct conclusion -- that is, a dismissal predicated on a federal employee's failure to consult with an EEO counselor within forty-five days is a decision on the merits for claim preclusion purposes -- the accuracy of district court's rationale requires further explanation. The specific condition precedent addressed by the district court is readily akin to dismissal for failing to comply with a statute of limitations. In either context, whether the plaintiff fails to consult with the EEO counselor within forty-five days of the discriminatory event, or whether the plaintiff fails to file suit within the statutorily prescribed period, the party is permanently foreclosed from meeting the condition or statutory requirement. Simply, the party is unable to rewind the clock, fulfill the condition / file the action within the requisite time period, and proceed to an adjudication of his or her claim. However, there are certain condition precedents where, although the party may not have fulfilled the condition prior to filing suit in the district court, he or she may return to the administrative process, fulfill the

condition, and re-file the civil action.[10] Therefore, not all decisions finding that a plaintiff failed to fulfill a condition precedent are readily comparable to a finding that a party failed to comply with the statute of limitations.

It is the potential overreaching of the district court's reasoning that warrants an express limitation. This Court repeatedly has cautioned that a decision on the merits is one that signifies the "death knell" of the litigation. *See Wilkins v. Jakeway*, 183 F.3d 528, 534 (6th Cir. 1999) ("[T]his is a death knell for Plaintiff's [False Claims Act] claims against the Defendants, in their individual capacities, and is essentially a decision on the merits."); *Rogers*, 798 F.2d at 916 ("Where a statutory right is being pursued, however, and the defense raised is that the plaintiff or defendant does not come within the purview of the statute, the judicial acceptance of this defense, . . . is the death knell of the litigation and has the same effect as a dismissal on the merits."). The underlying principle of this "death knell" language is that a dismissal on the merits is one that permanently forecloses a party from further advancing a claim or defense.

---

[10]For example, 29 C.F.R. § 1614.407 (a) requires an aggrieved party to file suit within ninety days of receiving notice of the EEOC's final action or dismissal of a complaint. When the administrative process is complete, the EEOC issues to the aggrieved party a "right to sue letter" and the party thereafter has ninety days in which to file a civil action. *See* 29 C.F.R. § 1614.109. Where the plaintiff files suit prior to receiving the right to sue letter, the district court is compelled to dismiss the premature action for failure to exhaust administrative remedies. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000). It is well-settled that the ninety day right to sue provision is an administrative condition precedent, rather than a jurisdictional prerequisite. *See Truitt,* 148 F.3d at 646-47. Consequently, the court should dismiss the action pursuant to Rule 12 (b)(6), for failure to state a claim, rather than Rule 12 (b)(1), for lack of subject matter jurisdiction. Under the district court's analysis, such a dismissal would be on the merits for claim preclusion purposes, notwithstanding the aggrieved party's ability to return to the administrative process, await a right to sue letter, and subsequently re-file the action.

Here, the district court's determination that Mitchell failed to meet with an EEO counselor within the requisite time period permanently foreclosed Mitchell's Rehabilitation Act claim. Mitchell could not, and will forever remain unable, to meet with an EEO counselor within forty-five days of the discriminatory act as required by 29 C.F.R. § 1614.105. However, not all dismissals for failing to meet a condition precedent will have this permanently barring effect. Therefore, a dismissal for failing to file a condition precedent is a decision on the merits only if the aggrieved party is permanently foreclosed from fulfilling the condition. As Mitchell was permanently foreclosed from fulfilling the requirements of 29 C.F.R. § 1614.105, the district court correctly determined that its decision in *Mitchell I* was a decision on the merits.

Mitchell nevertheless asserts that as the judgment in *Mitchell I* was not one on the merits because the district court relied on a "technicality" (Final Br. of Appellant, at 14) and, or, a "procedural defect" (Final Br. of Appellant, at 15). In support of his contention, Mitchell relies on *Wilkins*, 183 F.3d 528, where a prior panel of this Court stated: "[A]lthough the district court's dismissal was framed in terms of a Rule 12 (b)(6) dismissal on the merits, in actuality, the court's determination that the individual defendants were not 'employers' under the [False Claims Act] was jurisdictional because it did not go to the merits of Plaintiff's suit." *Wilkins*, 183 F.3d at 534.

Mitchell erroneously interprets the foregoing statements as requiring a judgment to reach the merits of a particular claim in order to have a preclusive effect. The patent deficiency in Mitchell's assertion, as demonstrated *supra*, is that dismissals for failing to comply with "technicalities" such as a statute of limitations constitute decisions on the merits. Moreover, Mitchell misplaces his reliance on *Wilkins* as there the Court addressed the preclusive effect of a judgment in the context of a party's failure to establish a jurisdictional prerequisite. In contrast, *Mitchell I* addressed a failure to fulfill a condition

precedent. As discussed *supra*, there is a significant distinction between a dismissal for a failure to fulfill a jurisdictional prerequisite and a dismissal for a failure to fulfill a condition precedent. As such, *Wilkins* is inapposite to the matter *sub judice*.

The instant appeal falls squarely within this Court's precedent establishing that a decision on the merits is one that permanently forecloses a party from advancing a claim or defense. As *Mitchell I* permanently foreclosed Mitchell from asserting claims pursuant to the Rehabilitation Act as a result of Mitchell's failure to meet with an EEOC counselor during the requisite period, the dismissal was a decision on the merits for claim preclusion purposes.

### 2.   Same Parties or Privies

The second element of claim preclusion operates to bar successive claims among the same parties or their privies. The district court expressly determined that its decision in *Mitchell I* barred all claims against the USPS because the USPS was a named party to the prior action. (J.A., 30-31.) Similarly, the district court determined that its judgment in *Mitchell I* barred all claims alleged against Chapman, Derrickson, and Nickles in their official capacities because a suit against a public employee in his or her official capacity is a suit against the agency itself. (J.A., 30-31); *see also Kentucky v. Graham*, 473 U.S. 159 (1985); *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978). Neither party disputes the district court's determinations in these respects.

*The Appellees' attempt to extend claim preclusion to Mitchell's individual capacity claims*

The Appellees nevertheless urge this Court to extend the preclusive effect of *Mitchell I* to the individual capacity claims asserted against Chapman, Derrickson, and Nickles. (Final Br. of Appellees, at 23-31.) In support of their

contention, the Appellees initially assert that the district court erred in construing the complaint in *Mitchell II* as alleging individual capacity claims. (J.A., 27-30.)

In *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001), this Court stated "while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Id.* (Internal citation and quotation marks omitted). *Harriman*'s "course of the proceedings" test examines "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Harriman*, 272 F.3d at 772 n.1 (citations omitted).

The Appellees acknowledge that the caption of the complaint identifies Chapman, Derrickson, and Nickles as subject to suit in their official and individual capacities. (J.A., 27-30.) The Appellees contend, however, that the allegations of the complaint demonstrate that all of the alleged conduct committed by Chapman, Derrickson, and Nickles occurred while the defendants acted in their official capacities as postal service employees. (J.A., 27-30.) Consequently, the Appellees argue that this "official conduct" cannot give rise to individual liability claims.

In *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court rejected the argument advanced by the Appellees that "officials may not be held liable in their personal capacity for actions they take in their official capacity." *Hafer*, 502 at 27. The Court reasoned that such a theory "would absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities." *Hafer*, 502 U.S. at 28. The Court further reasoned that such absolute

immunity extends only to a very limited class of officials, "including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions." *Hafer*, 502 U.S. at 28. As most public employees, including the Appellees, do not fall into this narrow class of officials, acts taken in the course of their official duties may serve as the basis for individual liability claims.[11] Therefore, the Appellees' argument is without merit.

The Appellees alternatively assert that the judgment in *Mitchell I* precludes the individual capacity claims because Chapman, Derrickson, and Nickles were in privity with the USPS. (J.A., 22-27.) In the context of claim preclusion, "privity . . . means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders Confectionery Prods., Inc. v. Heller*, 973 F.2d 474, 481 (6th Cir. 1992). The Appellees fail to acknowledge, however, that the rule of differing capacities provides that "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." RESTATEMENT SECOND OF JUDGMENTS § 36(2) (1982). The rule of differing capacities generally operates to allow a subsequent individual capacity suit against a governmental official even where a prior suit alleged an official capacity claim against the same official. *See Wilkins*, 183 F.3d at 534-35 (recognizing the distinction between individual and official capacity claims and applying the rule of differing capacities -- albeit without explicitly referring to the rule); *see also Warnock v. Pecos County*, 116

---

[11]In addition, the unique waiver of sovereign immunity applicable to actions against the USPS allows for official capacity claims against USPS employees. *See* 39 U.S.C. § 401 ("The Postal Service shall have the following general powers - (1) to sue and be sued in its official name."). Therefore, USPS employees are not cloaked with absolute immunity for their actions.

F.3d 776 (5th Cir. 1997) (holding that a prior suit against a municipality does not bar a later suit against local officials in their individual capacity); *Conner v. Reinhard*, 847 F.2d 384, 395 (7th Cir.) (holding that a prior suit against a municipality does not bar a subsequent suit against officials individually because official capacity and personal capacity suits involve different legal theories and defenses), *cert. denied*, 488 U.S. 856, 109 S. Ct. 147, 102 L. Ed. 2d 118 (1988); *Headley v. Bacon*, 828 F.2d 1272, 1277-79 (8th Cir. 1987) (distinguishing privity between principal and agent from privity between a governmental entity and officials sued in their individual capacities). *See also Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir.1990) ("Res judicata does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity.").

The rule of differing capacities therefore enables Mitchell to assert individual capacity claims against Chapman, Derrickson, and Nickles.

### 3. Was Or Should Have Been Litigated In The Prior Action

The central purpose of claim preclusion is to prevent the "relitigating of issues that were or could have been raised in [a prior] action." *Federated Dep't Stores, Inc., v. Moitie*, 452 U.S. 394, 398 (1981). The district court determined that Mitchell could have brought his Title VII, FMLA, 42 U.S.C. § 1983, Fourteenth Amendment, and KCRA claims in *Mitchell I*. The record supports the district court's finding.

It is undisputed that Mitchell was aware of all of the facts giving rise to his claims at the time he filed *Mitchell I.*

Indeed, Mitchell expressly alleged disability discrimination[12] and violations of the FMLA in both his Grievance and his EEO charge filed prior to *Mitchell I*. (J.A., 42, 160.)

In an effort to explain his failure to assert all of his potential claims, Mitchell alleges he refrained from filing a FMLA action in *Mitchell I* because that claim was the subject of the Grievance.[13] As the district court noted, Mitchell fails to cite any provision of the CBA requiring him to submit FMLA claims to binding arbitration prior to initiating a civil action. (J.A., 33.) Assuming *arguendo*, that the CBA mandates binding arbitration, it is well-established that the CBA must contain a "clear and unmistakable waiver" of Mitchell's FMLA rights to foreclose his entitlement to a judicial forum. *See Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631-632 (6th Cir. 1999) (citing *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 82 (1998)); *Plumley v. Southern Container, Inc.*, 303 F.3d 364 (1st Cir. 2002) (applying the "clear and unmistakable" waiver standard to FMLA claims); *Rogers v. New York University*, 220 F.3d 73 (2d Cir. 2000) (same). Mitchell fails to demonstrate any provision of the CBA containing a clear and unmistakable waiver of his statutory claims. Consequently, Mitchell fails to provide a sufficient justification for failing to file his statutory claims.[14]

---

[12]Mitchell brought his Title VII claim on the basis of disability discrimination. Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against an individual with respect "to compensation, terms, conditions or privileges of employment on the basis of the individual's race, color, religion, sex or national origin." *See* 42 U.S.C. § 2000e-2(a). Title VII does not address disability discrimination.

[13]Mitchell provides no explanation as to his failure to assert the other claims alleged in *Mitchell II*.

[14]It must be acknowledged, however, that the stringent timing requirements of 29 C.F.R. § 1614.101, *et seq.*, present potential perils for a party alleging multiple claims in separate administrative fora. Here, Mitchell was required to file *Mitchell I* within ninety days of his receipt of the right to sue letter, dated August 19, 1999. Admittedly, Mitchell's

#### 4. Conclusions regarding claim preclusion

The doctrine of claim preclusion thereby renders the district court's judgment in *Mitchell I* as a bar to the claims asserted against the USPS, as well as the claims alleged against Chapman, Derrickson, and Nickles in their official capacities. Claim preclusion does not, however, extend to the individual capacity claims asserted against Chapman, Derrickson, and Nickles because of the rule of differing capacities. As the district court correctly noted, Mitchell was not barred from arguing the merits of his individual capacity claims alleged pursuant to Title VII, the Rehabilitation Act, the KCRA, the FMLA, 42 U.S.C. § 1983, and the Fourteenth Amendment.[15]

---

FMLA Grievance was pending in Step 3 of the grievance procedure during this period. The appropriate course of action in this scenario was for Mitchell to timely file his civil action, alert the district court as to the pendency of the FMLA Grievance, and request a stay of the judicial proceedings while awaiting the resolution of the grievance. *See Churchill v. Star Enters.*, 183 F.3d 184, 192 (3d Cir. 1999) ("Attorneys should organize litigation that they are pursuing to avoid claim preclusion."). Upon resolution of the grievance, Mitchell could request the court to lift the stay and seek leave to amend his complaint in order to allege the FMLA action. To do otherwise, creates the very risk presented herein of obtaining a partial, yet preclusive, judgment.

[15]Mitchell wisely fails to present any argument on appeal with respect to his Title VII, the Rehabilitation Act, or KCRA claims. *See Wathen*, 115 F.3d at 404-05 n.6 (6th Cir. 1997) (reaffirming that Title VII does not provide for individual liability and the KCRA does not impose individual liability); *Hiller v. Brown*, 177 F.3d 542 (6th Cir. 1999) (holding that the Rehabilitation Act does not impose individual liability). Consequently, these claims are considered abandoned for the purposes of appeal. *See Enertech v. Mahoning County Comm'rs*, 85 F.3d 257 (6th Cir. 1996).

### B. Mitchell's 42 U.S.C. § 1983 and Fourteenth Amendment Claims

Mitchell asserts that the district court should have considered his 42 U.S.C. § 1983 and Fourteenth Amendment claims in light of *Bivens*, 403 U.S. 388.

Mitchell's argument requires little analysis. In *Bivens*, the Supreme Court recognized a right to recover damages against federal officials who violate an individual's constitutional rights. *See Bivens*, 403 U.S. at 395. Mitchell did not allege a *Bivens* claim in *Mitchell II*; rather, he averred claims pursuant to Section 1983. There lacks any authority in support of Mitchell's blanket proposition that a court must convert a Section 1983 claim asserted against federal officials to one asserting *Bivens* violations. Assuming *arguendo*, that this Court were to place such a requirement on the district courts, Mitchell's claim nevertheless fails. *Bivens* claims have a one year statute of limitations under Kentucky law. *See McSurely v. Hutchinson*, 823 F.2d 1002 (6th Cir. 1987). As the district court acknowledged, Mitchell filed his Section 1983 claim (or the purported *Bivens* action) nearly three years past the limitations period. (J.A., 34.)

Furthermore, it is well-settled that USPS employees may not allege *Bivens* claims arising out of their employment relationship with the USPS. *See Harper v. Frank*, 985 F.2d 285, 290 (6th Cir. 1993). *See also Turner v. Holbrook*, 278 F.3d 754 (8th Cir. 2002); *Pipkin v. United States Postal Serv.*, 951 F.2d 272, 275 (10th Cir. 1991). Consequently, Mitchell's purported *Bivens* claim fails as a matter of law.

### C. FMLA Individual Liability for Public Agency Employers

Mitchell's final assertion on appeal is that the district court erroneously interpreted the FMLA as to preclude individual liability claims against public agency employers. The issue of whether the FMLA provides for individual liability against

a public employer is a matter of first impression for this Court.

"Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *See Lake Cumberland Trust, Inc. v. United States Environmental Protection Agency*, 954 F.2d 1218, 1222 (6th Cir. 1992) (citation omitted). The plain meaning of the statute controls, except in rare cases in which the literal application of the statutory language would compel an odd result or produce a result demonstrably at odds with legislative intent. *See Public Citizen v. United States Dep't of Justice*, 491 U.S. 440 (1989). We must begin with the statute's plain language, and may resort to a review of congressional intent or legislative history only when the language of the statute is not clear. *See In re Comshare, Inc.*, 183 F.3d 542, 549 (6th Cir. 1999) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

Turning to the statute, the FMLA entitles "eligible employees" to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. *See* 29 U.S.C. § 2612(a)(1). The statute ensures that the employee will be restored to the same or an equivalent position upon returning to work. *See* 29 U.S.C. § 2614(a)(1).

The statute creates a private right of action entitling "eligible employees" to seek both equitable relief and money damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction," 29 U.S.C. § 2617(a)(2), should that employer "interfere with, restrain, or deny the exercise of" FMLA rights, 29 U.S.C. § 2615(a)(1).

The FMLA expressly incorporates into its provisions the Fair Labor Standards Act's ("FLSA"), 29 U.S.C. §§ 201-219 (1994), definition of "employee." *See* 29 U.S.C. § 2611(3) ("The terms 'employ', 'employee', and 'State' have the same meanings given such terms in subsections (c), (e), and (g) of section 203 of this title [the FLSA]."). The FLSA defines employee as "any individual employed by an employer" and includes "any individual employed by the United States Postal Service." 29 U.S.C. § 203 (e)(1) & (2)(B). An "eligible employee" under the FMLA is an "employee" who "has been employed for at least 12 months by the employer with respect to whom leave is requested . . . ; and for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

The FMLA defines "employer" as follows:

(4) Employer

(A) In general

The term "employer" –

 (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or proceeding calendar year;

 (ii) includes --

   (I) any person who acts, directly or indirectly, in the interest of an employer to any employees of such employer; and

   (II) any successor in interest of the employer;

 (iii) includes any "public agency", as defined in section 203(x) of this title; and

(iv) includes the General Accounting Office and the Library of Congress.

(B)  Public agency.

For purposes of subparagraph (A) (iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

29 U.S.C. § 2611.[16]

The issue of whether the FMLA imposes individual liability turns on an interpretation of the term "employer." Of particular pertinence, the FMLA defines an "employer," in part, as "any person who acts, directly or indirectly, in the interest of the employer." 29 U.S.C. § 2611(4)(A)(ii)(I). This language mirrors the FLSA's definition of employer. *Compare* 29 U.S.C. § 2611(4)(A)(ii)(I) *with* 29 U.S.C. § 203(d) ("Employer includes any person acting directly or indirectly in the interest of any employer in relation to an employee and includes a public agency, but does not include a labor agency . . . ."). This is not a coincidence. The applicable regulations indicate:

An "employer" [under the FMLA] includes any person who acts directly or indirectly in the interest of an employer to any of the employer's employees. The

---

[16]The FMLA again borrows from FLSA for its definition of "public agency." Title 29 U.S.C. § 203(x), which is referenced in the FMLA's definition of "employer," provides the following definition of "public agency":

(x) "Public Agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State, or a political subdivision of a State; or any interstate governmental agency.

29 U.S.C. § 203 (x).

definition of "employer" in section 3(d) of the Fair Labor Standards Act (FLSA), 29 U.S.C. 203(d), similarly includes any person acting directly or indirectly in the interest of an employer in relation to an employee. As under the FLSA, individuals such as corporate officers "acting in the interest of an employer" are individually liable for any violations of the requirements of the FMLA.

29 C.F.R. § 825.104 (d);[17] *see also Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 827 (6th Cir. 2002) (recognizing that the provisions of the FMLA generally mirror those provided in the FLSA) (citation omitted). This Court has interpreted the FLSA's "any person who acts, directly or indirectly, in the interest of the employer" language to impose individual liability on private-sector employers. *See United States Dep't of Labor v. Cole Enters., Inc.*, 63 F.3d 775 (6th Cir. 1995); *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994). The presence of identical language in the FMLA tends to support a similar finding. *See Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) (comparing the FMLA and FLSA definitions of "employer" and determining that each statute imposes individual liability); *see also Cantley v. Simmons*, 179 F. Supp. 2d 654, 655-58 (S.D. W. Va. 2002) ("[I]ndividual liability is permitted under the FMLA."); *Brunelle v. Cyro Indus.*, 225 F. Supp. 2d 67, 82 (D. Me. 2002) (holding that individual liability under the FMLA arises from a similar definition of employer under the FLSA); *Richardson v. CVS Corp.*, 207 F. Supp. 2d 733, 741-44 (E.D. Tenn. 2001) (finding that the majority of the courts have found "that

---

[17]The Secretary of Labor has the authority to issue regulations pertaining to the FMLA. *See* 29 U.S.C. § 2654. Generally, we defer to the regulations when determining how to interpret a statute, as long as the regulations present a reasonable interpretation of the statute. *See Intermet Corp. & Subsidiaries v. Commissioner*, 209 F.3d 901, 904 (6th Cir. 2000). That is, the regulation must "implement the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307 (1967).

individuals can be subject to liability under the FMLA"); *Morrow v. Putnam*, 142 F. Supp. 2d 1271, 1275-76 (D. Nev. 2001) (holding that individual liability exists under the FMLA); *Longstreth v. Copple*, 101 F. Supp. 2d 776, 780 (N.D. Iowa) (same); *Carter v. Refrigeration Sales Corp.*, 49 F. Supp. 2d 1028, 1030 (N.D. Ohio 1999) (recognizing that the majority of courts extend individual liability in FMLA claims); *Meara v. Bennett*, 27 F. Supp. 2d 288, 290 (D. Mass. 1998) ("Although the court has not been able to locate any Court of Appeals decisions addressing the issue of individual liability under the recently enacted FMLA, the decisional law developing at the district court level appears to favor individual liability."); *Bryant v. Delbar Prods., Inc.*, 18 F. Supp. 2d 799, 807-09 (M.D. Tenn. 1998) (noting that "the majority of courts have determined that the FMLA extends individual liability to those who control a plaintiff's ability to take a leave of absence"); *Mercer v. Borden*, 11 F. Supp. 2d 1190, 1190 (C.D. Cal. 1998) ("Since the definition of 'employer' in the FMLA is identical to the definition of 'employer' in the [Fair Labor Standards Act], the Court holds that individuals are potentially subject to liability under the FMLA. The plain language of the FMLA compels this result."); *Rupnow v. TRC, Inc.*, 999 F. Supp. 1047, 1048 (N.D. Ohio 1998) ("[T]he weight of authority favors individual liability for a supervisor where the 'supervisor exercise[s] sufficient control over the plaintiff's ability to take protected leave.'"); *Stubl v. T.A. Systems, Inc.*, 984 F. Supp. 1075, 1083 (E.D. Mich. 1997) ("Although reasonable arguments could be made that the policy rationale underlying the Title VII decisions finding no individual liability should dictate the same result under the FMLA, the plain language of the statute and the regulations mandate otherwise."); *Waters v. Baldwin County*, 936 F. Supp. 860, 863 (S.D. Ala. 1996) (finding that "employer" as used in the FMLA parallels "employer" in the FLSA; therefore, individual liability exists under the FMLA); *Knussman v. Maryland*, 935 F. Supp. 659, 664 (D. Md. 1996) ("Liability of individual defendants in their individual capacities is not foreclosed under the FMLA."); *Johnson v. A.P. Prod., Ltd.*, 934 F. Supp. 625 (S.D.

N.Y. 1996) (holding that "employer" in the FMLA mirrors that used in the FLSA which imposes individual liability); *Freemon v. Foley*, 911 F. Supp. 326 (N.D. Ill. 1991) (same).[18]

However, the narrow issue before this Court is whether the FMLA imposes individual liability on *public agency* employers. The FMLA's definition of "employer" segregates the specific provision regarding individual liability (i.e., the "directly or indirectly" clause), *see* 29 U.S.C. § 2611(4)(A)(ii)(I) (hereinafter the "individual liability provision"), from the specific provision addressing "public agency" employers, *see* 29 U.S.C. § 2611(4)(A)(iii) (hereinafter the "public agency provision"). The Court of Appeals for the Eighth Circuit has determined that this separation is of little interpretative import, noting that it did not see "'why public officials should be exempted from liability while managers in the private sector are not.'" *Darby*, 287 F.3d at 681 (quoting *Morrow*, 142 F. Supp. 2d at 1275). In contrast, the Court of Appeals for the Eleventh Circuit has determined that the FMLA does not impose individual liability on employees of public agencies. *See Wascura v. Carver*, 169 F.3d at 683, 686 (11th Cir. 1999).

Notwithstanding the guidance from these decisions, we respectfully note that neither *Darby* nor *Wascura* attempt a textual analysis of the FMLA. The court in *Darby* limited its reasoning to the general proposition that public and private employers should not be treated separately under the statute. *See Darby*, 287 F.3d at 681. The *Wascura* court concluded that it was constrained by a prior decision of that court that did not extend individual liability under the FLSA to public agency employers. *See Wascura*, 169 F.3d at 686 (citing *Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995)). By

---

[18]*But see Carter v. Uniform Rental Serv. Of Culpepper, Inc.*, 977 F. Supp. 753, 759 (W.D. Va. 1997) (following Title VII case law and finding no individual liability under the FMLA); *Frizzel v. Southwest Motor Freight, Inc.*, 906 F. Supp. 441 (E.D. Tenn. 1995) (analogizing the FMLA to Title VII and rejecting individual liability under the FMLA).

addressing the issue in terms of the FLSA, the Eleventh Circuit avoided the potential interpretive dilemma posed in 29 U.S.C. § 2611(4).

Similarly, the district courts have resolved the issue with conflicting results. *See Morrow*, 142 F. Supp. 2d at 1273 (allowing FMLA suit against individual postal supervisors); *Keene*, 127 F. Supp. 2d at 776 (holding no governmental individual liability under the FMLA); *Klivitis v. County of Luzerne*, 52 F. Supp. 2d 403, 412 (allowing FMLA suit against district justice in individual capacity); *Meara,* 27 F. Supp. 2d at 291 (allowing FMLA suit against the district attorney in his individual capacity); *Knussman*, 935 F. Supp. at 664 (allowing FMLA individual capacity suit against officers in state highway patrol); *Freemon*, 911 F. Supp. at 330-31 (allowing FMLA supervisory liability claim against state hospital employee); *Frizzell*, 906 F. Supp. at 449 (determining no supervisory liability for public officials under the FMLA).

Our independent examination of the FMLA's text and structure reveals that the statute does not impose individual liability on public agency employers. Three factors compel this conclusion.

First, the section defining "employer," 29 U.S.C. § 2611(4)(A), explicitly separates the individual liability provision and public agency provision into two distinct clauses. Section 2611(4)(A)[19] commences with "'The term employer -- '", and follows with four clauses addressing what the term "employer" "means" and "includes." *See* 29 U.S.C. § 2611(4)(A). The use of an em dash following "employer" indicates that clauses (i), (ii), (iii), and (iv) modify the term

---

[19]All further citations to "Section" shall refer to Title 29 of the United States Code.

"employer."[20] Therefore, the plain text of the statute provides the following definition of "employer":

> (1)   An employer means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of the 20 or more calendar workweeks in the current or proceeding calendar year. *See* 29 U.S.C. § 2611 (4)(A)(i).
>
> (2)  An employer includes any person who acts directly or indirectly in the interest of an employer to any of the employees of such employer; and an employer includes any successor in interest of an employer. *See* 29 U.S.C. § 2611 (4)(A)(ii).
>
> (3)  An employer includes any "public agency" as that term is defined in the FLSA. *See*  29 U.S.C. § 2611 (4)(A)(iii).
>
> (4) An employer includes the General Accounting Office and the Library of Congress.[21]  *See* 29 U.S.C. § 2611 (4)(A)(iv).

The relationship between "employer" and clauses (i) -(iv) is not in contention.  Rather, it is the purported interrelationship among clauses (i)-(iv) that yields conflicting views regarding whether the FMLA imposes individual liability on public agency employers. *Compare Keene*, 127 F. Supp. 2d at 775 (explaining that Congress separated the

---

[20]Throughout the FMLA, the use of the em dash indicates that the provisions following the em dash modify the immediately preceding provision or term. *See*, *e.g.*, 29 U.S.C. § 2601(a) & (b); § 2611(2)(A) & (B), (6), (11), (12); § 2612(b)(2),(e)(2), (f);§ 2613(b);  § 2614(a), (c)(2), (3); § 2615(b); § 2617; § 2618; § 2632.

[21]Congress added Section 2611(4)(A)(iv) several years following the enactment of the FMLA. *See* Pub.L. 104-1, § 202(c)(1)(A) (1995).

individual liability provision from the public agency provision in an effort to clarify the "commingling" of public agency and private employers evident in the FLSA) *with Morrow*, 142 F. Supp. 2d at 1273 (interpreting the individual liability provision and public agency provision as inter-related.)  An examination of Section 2611(4)(A)'s text and structure demonstrates that the individual liability provision and public agency provision are separate and distinct.

As noted earlier, the FMLA introduces related provisions through the use of the em dash.  In accordance with this practice, Section 2611(4)(A) implements the em dash into its definition of employer.  *See* 29 U.S.C. § 2611(4)(A).  Similarly, Section 2611(4)(A)(ii) utilizes the em dash to establish a relationship between the individual liability provision and the provision addressing successors in interest.  *See* 29 U.S.C. § 2611(4)(A)(ii).  Notwithstanding this repeated and consistent use of the em dash, Section 2611(4)(A) lacks any punctuation demonstrating an inter-relationship between clauses (ii)-(iv).  Indeed, the separation of otherwise related concepts (i.e., what the term "employer" "includes") into distinctly enumerated clauses compels an interpretation that treats each clause in an independent manner.  This is particularly the case in light of clause (ii)'s inclusion of an em dash preceding the individual liability provision and successor in interest provision. *See* 29 U.S.C. § 2611 (4)(A)(ii).  It stands to reason that if clauses (ii) - (iv) are similarly inter-related, the text of the statute would likewise provide punctuation or analogous language linking the clauses.  In the absence of such guidance, and in accordance with the plain text's separation of the clauses into distinct provisions, the structure of Section 2611(4)(A) patently demonstrates that the individual liability provision and public agency provision are separate and distinct.

The text of Section 2611(4)(A) further compels an interpretation that separates the individual liability provision from the public agency provision.  The straightforward interpretation advanced *supra*, demonstrates that the term

employer "means" what is included in clause (i) and "includes" what is provided in clauses (ii), (iii), and (iv).  On the other hand, the commingling of clauses (i)-(iv) into the term "employer" yields an interpretation that renders other provisions of the statute superfluous, as well as creates several oddities.

Initially, an interpretation that commingles clauses (i) and (ii) into the definition of employer presents little difficulty.  For instance: "The term employer means any person engaged in interstate commerce . . . who employees 50 or more employees . . .; and includes any person who acts directly or indirectly in the interest of any person engaged in interstate commerce who employs 50 or more employees . . . ; and any successor in interest of any person engaged in interstate commerce . . . who employs fifty or more employees . . . ."[22] *See* 29 U.S.C. § 2611(4)(A)(i) & (ii).  However, when the public agency provision is introduced into an interpretation with clauses (i) and (ii), the statute provides -- "the term employer means any person engaged in interstate commerce . . . who employees 50 or more employees . . .; and includes any person who acts directly or indirectly in the interest of any person engaged in interstate commerce . . .who employs 50 or more employees . . . ; and any successor in interest of any person engaged in interstate commerce . . . who employs fifty or more employees; and includes any public agency engaged in interstate commerce . . . who employs 50 or more employees . . .; and includes any person who acts directly or indirectly, in the interest of the public agency engaged in interstate commerce . . . who employs fifty or more employees; and any successor in interest of the public agency . . .engaged in interstate commerce . . . who employs fifty or more employees . . . ." *See* 29 U.S.C. 2611(4)(A)(i),(ii), & (iii).

---

[22]This interpretation underlies our prior determination that the FMLA extends individual liability to private-sector employers.

Beyond the obvious redundancy in this interpretation, the commingling of clause (i) and (ii) with the public agency provision renders superfluous Section 2611(4)(B). *See* 29 U.S.C. 2611(4)(B) ("[A] public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce."). In addition, it is well-settled that a public agency does not have to meet the 50 employee requirement to be considered an employer under the statute. *See* 29 C.F.R. § 825.104(a) ("Public agencies are covered employers without regard to the number of employees employed."). Consequently, an interpretation commingling clauses (i), (ii), and (iii) into the FMLA's definition of employer cannot be sustained. *See Lake Cumberland Trust*, 954 F.2d at 1222.

The result is similarly untenable when the interpretation aggregates clause (iv) with clauses (i) and (ii).[23] The result yields the following: "The term employer means any person engaged in interstate commerce . . . who employs 50 or more employees . . .; and includes any person who acts, directly or indirectly, in the interest of any person in interstate commerce . . . who employs fifty or more employees. . . ; and includes a successor in interest of any person engaged in interstate commerce . . . who employs fifty or more employees . . . ; and includes the General Accounting Office and the Library of Congress; and includes a successor in interest of the General Accounting Office and the Library of Congress." *See* 29 U.S.C. § 2611(4)(A)(i), (ii), & (iv). This interpretation implies that the FMLA extends specific protection to employees of the GAO and the Library of Congress from future successors in interest. While the Court would at least consider, albeit skeptically, an interpretation of the FMLA that included protections against a successor in interest of

---

[23]A plain text interpretation of the statute would require commingling (i), (ii), (iii), and (iv). In the interests of convenience and brevity, the Court shall proceed with its analysis of (iv) by omitting (iii) as the difficulties of clause (iii) have been previously discussed.

public agencies in general,[24] it is an exercise in absurdity to consider that the FMLA sought to protect employees of two long-standing federal entities from threats posed by any future successors in interest.[25] Accordingly, we must reject an interpretation that creates such a result. *See Lake Cumberland Trust*, 954 F.2d at 1222.

A third factor also undermines an interpretation of employer that extends the individual liability provision to public agencies. A definition of employer that incorporates the individual liability provision and public agency provision into a single clause is substantially similar to, if not identical, to the FLSA's definition of employer. *Cf.* 29 U.S.C. § 203 (d) ("Employer includes any person acting directly or indirectly in the interest of any employer in relation to an employee and includes a public agency, . . ."). As discussed *supra*, the FMLA adopts several of the FLSA's provisions. However, in each instance where the FMLA adopts a provision of the FLSA, the FMLA refers directly to the FLSA, rather than provides a restatement of the FLSA's provision. The court in *Keene* explained the significance of the FMLA's modification of the FLSA's "employer":

> In 1974 Congress merely engrafted "Public Agency" into the FLSA by adding to an existing definition for private employers. This did create an ambiguous situation concerning the liability of public agency employees. But, in the FMLA, Congress explicitly took "Public

---

[24]Notwithstanding the relatively unique factual scenario addressing successive public entities, the *Morrow* court successfully endeavored to provide a specific instance where an FMLA suit was allowed against the Federal Deposit Insurance Corporation as a successor in interest to the Resolution Trust Corporation. *See Morrow*, 142 F. Supp. 2d at 1273 (citing *Rhoads v. FDIC*, 956 F. Supp. 1239, 1254 ( D. Md. 1997)).

[25]The Library of Congress, established in 1800, is the nation's oldest federal cultural institution. The Budget and Accounting Act of 1921, 42 Stat. 20, created the GAO.

Agency" out of the private employer definition and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer. Therefore, a better way to view the situation is that the FMLA corrected the ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA.

*Keene*, 127 F. Supp.2d at 775.[26]  This rationale is entirely persuasive in light of the FMLA's text and framework.

We therefore conclude that the FMLA's individual liability provision does not extend to public agencies. Three factors emanating from the text and framework of the statute support this conclusion. First, Section 2611(4)(A) segregates the provision imposing individual liability from the public agency provision. Second, an interpretation that commingles the individual liability provision with the public agency provision renders certain provisions of the statute superfluous and results in several oddities. Finally, as evidenced by other provisions of the statute, the FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions.

We note in passing that several factors extending beyond the plain text of the statute support our conclusion against individual liability for public employers.  First, our interpretation is in accord with the regulations propounded by the Secretary of Labor. Title twenty nine C.F.R. § 825.104(a) provides that "employers covered by FMLA also include any person acting, directly or indirectly, in the interest of a

---

[26]The Keene court's analysis of the legislative history of the FLSA's public agency provision is in accord with prior decisions of the United States Supreme Court, as well as the decisions of this Court. *See*, *e.g.*, *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985); *Marshall v. Owensboro-Daviess County Hosp.*, 581 F.2d 116 (6th Cir. 1978).

covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency."  29 C.F.R. § 825.104(a).  The regulation's express separation between public agency and the "directly or indirectly" language supports our similar interpretation of Section 2611(4)(A). In addition, the example of individual liability provided in the regulations exclusively pertains to the corporate setting, thereby evincing an intent to limit such liability to the private sector. *See* 29 C.F.R. § 825.104 (d) ("As under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of the FMLA."). In that same vein, we note that this Court has never extended individual liability to public employees under the FLSA.[27] Consequently, in addition to the text and structure of the statute, the regulations interpreting the FMLA and this Court's lack of precedent to the contrary, compel the conclusion that the FMLA does not impose individual liability on public agency employers.

Accordingly, we conclude that the district court correctly interpreted the FMLA as to preclude Mitchell's individual capacity claims under the statute.

**V.**

For the foregoing reasons, the decision of the district court granting summary judgment in favor of the defendants is **AFFIRMED**.

---

[27]In *Wong-Opasi v. Tennessee State Univ.*, Nos. 99-5658, 99-5660, 2000 U.S. App. LEXIS 21242, filed Aug. 16, 2000, this Court addressed, *inter alia*, an FLSA claim asserted against administrators of a state college and ultimately concluded that the claim lacked merit. As an unpublished opinion, the decision is not binding precedent. *See  Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002). Moreover, in light of the ultimate disposition of the case, the issue of individual liability for public agency employers was of little relevance. Simply, this Court has not addressed a textual analysis of whether the FLSA imposes individual liability on public agency employers.